## BENJAMIN F. SHAW *vs.* ANDREW J. FARNSWORTH.

J. S., being in occupation as tenant at will of a house owned by a partnership, wrote to one of the partners: "If you will put a new furnace into the house, I will take the house for three years from" a certain future day, "at which time my present term expires, paying therefor $300 per annum from that date;" to which the partner replied on the same day, subscribing his letter as agent for the firm, and stamping it with an internal revenue stamp appropriate to an agreement and not to a lease: "Your proposal to lease the house you now occupy, belonging to the firm, for three years from" the future day named, "at $300 per annum, payable quarterly, is accepted. We have ordered a new furnace to be put in forthwith." The furnace was put in before the three years began to run. After the beginning of the three years, all the partners joined in a written lease of the house to a third person, who gave notice thereof to an undertenant of J. S. then in occupation, and upon his refusal to quit brought an action against him for possession. *Held*, that the writings exchanged between J. S. and the partner were a present demise to commence in the future, by virtue of which the possession of his undertenant was valid, and the action could not be maintained.

ACTION on the Gen. Sts. c. 137, for possession of part of a dwelling-house in Peabody. Writ dated December 9, 1870. In the superior court, on appeal from the police court of Salem, the parties stated the following case :

The house was property of the Essex Glue Company, a partnership consisting of Elijah W. Upton, Thaddeus W. Walker and Nehemiah Walker, the latter two themselves partners under the firm of Walker & Brother. On November 26, 1869, Thomas L. Putnam, who was in occupation of it as a tenant at will, wrote to Walker & Brother, that, "if you will put into the house I now occupy a new furnace, I will take the house for three years from February 1, 1870, at which time my present term expires, paying therefor $300 per annum from that date ; " and on the same day he received a reply, signed " Walker & Brother, Agents for the Essex Glue Company," and stamped with an United States internal revenue stamp of the denomination of five cents, as follows : " Your proposal to lease the house you now occupy at Peabody, belonging to the Essex Glue Company, for three years from February 1, 1870, at $300 per annum, payable quarterly, is accepted. We have ordered a new furnace to be put in forthwith."

Three days afterwards, on November 29, 1869, the furnace referred to was put into the house ; and Putnam continued in personal occupation of the house till October 1, 1870, when he underlet to the defendant the part of it of which it was sought to dispossess him in this action. On November 1, 1870, Upton and the two Walkers executed a written lease of the house to the plaintiff for two years from that date, who gave notice thereof to the defendant ; but the defendant refused to surrender possession, and held the plaintiff out by force.

On these facts the superior court ordered judgment for the defendant, and the plaintiff appealed.

S. Lincoln, Jr., (S. B. Ives, Jr., with him,) for the plaintiff. 1. The correspondence is mere negotiation, and establishes no contract.

2. If it does establish any contract, it was only an agreement for a lease. What it was depends on the intent of the parties, to be gathered from their language and acts. Kabley v. Worces-

*ter Gas Light Co.* 102 Mass. 392. *McGrath* v. *Boston,* 103 Mass. 369. *Doe* v. *Ashburner,* 5 T. R. 163. In cases in which words similar to those here used have been held to operate as a present demise, the agreement has been followed by immediate possession, and from this the intent has been inferred. But Put- nam's possession on November 26, 1869, was on a different ten- ure ; the letters unequivocally refer to a future possession ; and apt words are not enough if the intent was otherwise. The test is, whether the parties contemplated doing any other act before possession should pass. *Jackson* v. *Delacroix,* 2 Wend. 433. *Bacon* v. *Bowdoin,* 22 Pick. 401. *John* v. *Jenkins,* 1 Cr. & Mees. 227. And Putnam's proposal was not to take the house uncon- ditionally. The omission of any of the various covenants which a prudent landlord would make, and the fact that the letter in reply to Putnam was stamped with a stamp appropriate to an agreement and not to a·lease, are also circumstances indicative of the intent. The letters do not contain such an agreement as equity would enforce, for want of the ordinary details of a lease. *Morgan* v. *Bissell,* 3 Taunt. 65. It is immaterial that Putnam continued in possession after February 1, 1870. *Phillips* v. *Hart- ley,* 3 C. & P. 121.

3. If there was a lease at all, it was good to Putnam alone.

4. Walker & Brother were not sole owners of the house. A formal lease of it, executed by them alone, without other author- ity than the case finds, would not pass the estate for the term claimed. Still less will an informal correspondence conducted by part of the owners pass it as against a formal lease executed by all of them.

*J. C. Perkins,* for the defendant.

AMES, J. According to the decisions in *Bacon* v. *Bowdoin,* 22 Pick. 401, *Doe* v. *Ries,* 1 Moore & Scott, 259, *Hancock* v. *Caffyn,* Ib. 521, and *Kabley* v. *Worcester Gas Light Co.* 102 Mass. 392, the letters which passed between the original parties must be con- sidered as a lease, and not as a mere agreement that a lease should be drawn up and executed at a future time. The proposition by Putnam was not to take a lease of the house, but to take " the house," for a specified term and a specified rent. The lessors on

their part reply that the proposal "to lease the house," for the term and at the rent proposed, is accepted. The only thing left conditional in the arrangement was the putting in of a new furnace by the lessors, and that condition was fulfilled before the day appointed for the commencement of the new term. *Chapman* v. *Bluck*, 5 Scott, 515, 531. Under this arrangement Putnam occupied the house, and we must consider him as so occupying under a written contract, in which the building, the commencement and length of the term, and the rate of rent were distinctly described and made certain. No additional document was necessary to express the intent of the parties, and there is no indication in the writing, or in their conduct, that any other or more formal instrument was intended to be made. Under these circumstances there can be no doubt that the parties intended what the language clearly imports, namely, a present demise to commence *in futuro*. *Bacon* v. *Bowdoin*, above cited. Putnam was rightfully in possession under that contract, and his title was not divested by the subsequent lease to the plaintiff. As there was no clause in the agreement against underletting, the defendant is rightfully in possession as a sub-tenant of Putnam.

*Judgment for the defendant.*