| 89 | 239 |
| 93 | 186 |

COLCLOUGH, Respondent, vs. CARPELES, Appellant.

*December 20, 1894 — January 8, 1895.*

*Landlord and tenant: Lease or agreement for lease? Agreement to erect building: Compliance with specifications.*

1. A written agreement provided that the plaintiff "hereby lets, demises, and leases unto" the defendant the premises described, "to have and to hold the same for the term ending" at a date named, at a specified annual rental payable in monthly instalments on the 15th day of each month, "said rental to begin when the building herein described shall be ready for occupancy." Plaintiff agreed therein to commence the erection of a factory building on the premises, and to complete it ready for occupancy on or before a certain date, according to plans and specifications made a part of the contract, unless prevented by causes beyond his control. The agreement contained also the usual formal stipulations of a lease. *Held,* that it was a valid lease *in præsenti* for a term to commence *in futuro,* the element of certainty in the commencement of the term being satisfied by the completion of the building at the time agreed.

2. In an action upon such agreement to recover rent from defendant, who had refused to accept the building, it would be a defense to show that there had not been a substantial compliance with the specifications, or that the walls, in respect to which there were no specifications, had not been constructed in a reasonably safe and workmanlike manner or of reasonably safe and proper materials for the known purposes for which the building was to be used, without showing that at the time the premises were tendered to defendant the building was *entirely unsafe*, or that defects then existing. by reason of the' plaintiff's failure to substantially perform his contract, whether open or latent, and since developed, in whole or in part, had rendered it *absolutely unsafe* or *in danger of tumbling down*, or that it was *actually unsafe*.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Reversed*.

This is an action upon a certain instrument claimed to be a lease, to recover two monthly instalments of rent alleged to have become due thereon for the months ending the 15th of March and 15th of April, 1892, and remaining unpaid, as and for rent for the factory building described in the written agreement made an exhibit to the complaint. The answer of the defendant was, in substance, a general denial.

The material parts of the agreement, dated October 12, 1891, are that the plaintiff "hereby lets, demises, and leases unto the said party of the second part" (the defendant) the premises therein described, "to have and to hold the same for a term ending the 1st day of January, 1902, at an annual rental of $4,300, payable in equal monthly instalments of $358.33 each, on the 15th day of each and every month; said rental to begin when the building hereinafter described shall be ready for occupancy, and the first payment at such rate is to be made on the 15th day after the completion of said building so that it shall be ready for occupancy, and thereafter on the 15th day of each month." The plaintiff agreed that he would at once commence the erection of a factory building upon said premises, and complete the same so that it would be ready for occupancy on or before the 1st

Colclough vs. Carpeles.

·day of March, A. D. 1892, according to the plans and speci-
fications referred to and made a part of the contract, unless
the completion of the building at that time should be pre-
vented by causes beyond his control, exercising reasonable
·care and diligence. The building was to be a four-story
and basement brick building of specified dimensions, the de-
fendant agreeing that he would "pay the said rent at the
times stated during the continuance of said term, and to
quit and deliver up the same to the lessor or his attorney
peaceably and quietly at the end of said term," unless he
purchased the same in the meantime, as therein provided;
and that if he should "fail to pay the rent aforesaid at any
of the times expressed in this lease, or shall underlease said
premises, or any part thereof, or assign this lease without
the consent of the lessor in writing, or shall fail to keep and
·observe any of the covenants herein contained, on his part,
then the lessor may expel the said lessee from said premises
forthwith;" and, in case of the total destruction of the
building by accidental fire, "this lease, and the rights of the
said party of the second part hereunder, shall thereupon
cease and determine;" and a conditional cessation of rent
in case the building should during the term of the lease be
accidentally damaged by fire, and not totally destroyed, was
provided for.

It was objected to this instrument that it was not a lease,
but an agreement for a lease; and also to any evidence being
received under the complaint, as not stating a cause of ac-
tion. It appeared that there had been a building on the
premises in question which had been partially destroyed by
fire, and the agreement contemplated a rebuilding for fac-
tory purposes, and the plans and specifications annexed to
the contract were put in evidence. As the building ap-
proached completion, the defendant objected to the manner
in which the building was being constructed, claiming that
no insurance could be obtained on it, by reason of improper

construction; and at his request three practical builders.
made an examination of it, and a written report to the de-
fendant as to its condition, to the effect that certain work
therein specified should be completed, and that, if such "de-
fects are mended," they considered the building safe enough
for his business; and the inspector of buildings of the city
of Milwaukee had, on the 12th of February, certified that
he did not consider the building safe to be used for factory
purposes, for the reason that new walls were erected upon
old ones which had been damaged by fire and water, and
that the walls could not withstand a constant vibration and
jarring, if the building was used for factory purposes. Evi-
dence was given tending to show that the plaintiff agreed
to make the changes suggested, and that the defendant
agreed that if the same were so made he would accept the
building, but he denied any such agreement on his part.

The evidence tended to show that the building was com-
pleted, exactly as the committee of builders had recom-
mended, by the 1st day of March, 1892. On that day the
plaintiff tendered possession of the building as having been
completed according to the contract. Said builders had
again examined the premises, and reported to the defendant,
March 18, 1892, to the effect that all the changes recom-
mended by them had been made, and that in their opinion
the building was perfectly safe for defendant's trunk factory.
Subsequently the defendant pointed out deficiencies as still
existing in the building, and declined to accept it with such
defects. On the 20th of April, 1892, H. C. Koch & Co., ar-
chitects, certified to an examination of the building, with
the plans and specifications, and that it was complete in all
respects as originally intended and contemplated. A large
amount of testimony was introduced, tending to show the
building was not completed according to the agreement,
plans, and specifications, and that there was a crack between
the division and party wall extending to three feet above

Colclough vs. Carpeles.

the second floor, then branching off on the division wall at an angle, and extending up to just under the roof, which appeared before March, 1892. A building expert, a witness for the plaintiff, testified to the condition of this crack upon an examination of the building made as late as September, 1893, in substance, that the defect could be remedied by running a rod on each side of the wall through the building, with washers on both sides of the wall outside, and that any immediate danger to the building could be overcome in that way, and the building made safe. The defendant never entered into possession of the premises, and refused to pay any rent.

The jury found a verdict for the plaintiff for $788.82, and, a motion for a new trial having been overruled, plaintiff had judgment thereon, from which the defendant appealed.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *J. G. Flanders.* They contended, *inter alia,* that the instrument described in the complaint is a mere executory agreement on the part of defendant to enter into a lease of the premises described when certain precedent conditions have been performed by plaintiff. Addison, Contracts (Morgan's ed.), § 676; Taylor, Landl. & T. § 39. The term for which the alleged lease should be in force was not to commence until the factory should be completed according to the plans and specifications mentioned therein, and ready for occupancy by defendant. *Wright v. Trevezant,* 3 Carr. & P. 441. Considering the instrument as a lease, it is invalid for the reason that although rent is reserved there is no certain time expressed when it shall commence, nor is it made contingent upon the happening of any certain event. 4 Wait, Act. & Def. 200, 201; Wood, Landl. & T. (1st ed.), § 184; *Pearson v. Ries,* 8 Bing. 181; Taylor, Landl. & T. § 70. It appearing from the proper construction of the instrument in question

Colclough vs. Carpeles.

as a whole, that the term mentioned therein is to commence
when the rental commences, viz: when the building speci-
fied is completed and ready for occupancy, and the time
when it should commence being uncertain and not determi-
nable, the instrument as a lease is void for uncertainty.
Wood, Landl. & T. § 184; *Regnart v. Porter*, 7 Bing. 451;
*Haywood v. Haswell*, 33 Eng. C. L. 79, 83; *Wright v. Treve-
zant*, 3 Carr. & P. 441; *Buell v. Cook*, 4 Conn. 242; *Dunk
v. Hunter*, 5 Barn. & Ald. 322.

For the respondent there was a brief signed by *Frank M.
Hoyt*, of counsel, and *Quarles, Spence, Hoyt & Quarles*, at-
torneys, and the cause was argued orally by *Frank M. Hoyt*.

PINNEY, J.  1. The contention of the defendant's counsel
is that the instrument on which the action is founded is not
a lease; that although rent is reserved by it and agreed to
be paid by the defendant, and it contains words of present
demise, and there is nothing to show that the parties con-
templated the execution of any other or further instrument
on the subject, still there is no certain time expressed when
it shall commence, nor is it made contingent upon the hap-
pening of any certain event; and therefore it is said that it
is invalid, as a lease, for uncertainty.  The general rule is
stated to be that no precise words or technical form of lan-
guage are required to constitute a present demise, and that
if there are words showing a present intention that one is
to give, and the other to have, possession for a determinate
term, a tenancy is created; and that where there are words
of present demise the instrument should operate as a lease,
and not as an agreement for a lease.  2 Addison, Cont. (Mor-
gan's ed.), § 677; *Chapman v. Bluck*, 4 Bing. N. C. 187, 196.
Unless some certain beginning or event is referred to by which
the period of its commencement may be ascertained, it will
be void for uncertainty.  Tayl. Landl. & Ten. § 70.  There

can be no doubt but that a valid term for years may be created to commence *in futuro,* and, if it be upon a contingency which must happen, the lease will be valid.

In the present case the premises are to be held for a term ending February 1, 1902, and the owner, the plaintiff, agreed to erect a factory building thereon, and complete it so that it would be ready for occupancy on or before March 1, 1892, according to certain plans and specifications, unless prevented by causes beyond his control, he on his part exercising reasonable care and diligence; reserving an annual rental of $4,300, payable in sums of $358.33 on the 15th of each month, to begin when the building shall be ready for occupancy, the first payment to be made on the 15th day thereafter, and thereafter on the 15th day of each month. It also contains the usual formal stipulations mentioned in the foregoing statement. We think that the instrument in question was a valid lease *in præsenti,* for a term to commence *in futuro,*— that is to say, on the 1st of March, 1892, being the date when it was agreed the building should be completed ready for occupancy; and there is evidence tending to show that it was so completed at the agreed time, and possession tendered to the defendant, and thereby the essential element of certainty of the commencement of the term was fully satisfied.

In *Thornton v. Payne,* 5 Johns. 74, an agreement to let a farm, on condition that an annual rent of $250 should be paid for it on the 1st of April in each year during the term, was made January 7, 1806, for six years from April 1, 1807, and ending April 1, 1813, and it was held to be a lease and not an agreement for a lease, and the payment of the $250 was not a condition precedent. It was there said by SPENCER, J., that "it is a cardinal point in determining whether contracts between parties in relation to letting are leases or agreements for leases, to seek for the intention of the parties from the whole instrument;" and that "in every

case decided in the English courts where agreements have been adjudged not to operate by way of passing an interest, but to rest in contract, there has been either an express agreement for a further lease, or construing the agreement to be a lease *in præsenti* would work a forfeiture, or the terms have not been fully settled and something further was to be done." An agreement to complete a certain building then erected for a factory and furnish water power and machinery therefor by a future day certain, and leasing said building to B. for a term of ten years from the day mentioned, etc., and B. entered into possession, it was held to be a present demise to commence *in futuro*, and not merely an agreement for a lease. *Bacon v. Bowdoin*, 22 Pick. 401, 405. And the case of *Jackson v. Delacroix*, 2 Wend. 433, was distinguished, on the ground that the agreement in that case contained a provision for a future lease. To the same effect is *Shaw v. Farnsworth*, 108 Mass. 357. And in *Bussman v. Ganster*, 72 Pa. St. 285, where the agreement with B. was that G. would erect a storehouse on his lot, with fixtures, to the satisfaction of B., to be ready by August 1st, at a rent of $600 per annum until April 1st, and thereafter for five years at the rate of $800 per annum, payable monthly, it was held that this was a lease of the land as well as the building, with a covenant by the lessee to pay rent; and Sharswood, J., says: "It is true, here are no formal words of demise, but it is very manifest that, after the erection of the building, there was created a term of years in the premises, with a certain commencement and a certain termination; in short, with all the requisites of a demise." The period need not be definitely fixed by the contract of the parties which creates the estate. *Id certum est quod certum reddi potest.* It is enough that the instrument contains sufficient means of ascertaining the commencement and the end of the term. Tied. Real Prop. § 173.

The conclusion at which we have arrived is sustained by

*Chapman v. Bluck*, 4 Bing. N. C. 187; *People ex rel. Ward v. Kelsey*, 14 Abb. Pr. 372; *Trull v. Granger*, 8 N. Y. 115, 118; *Becar v. Flues*, 64 N. Y. 518, 520. The right of the defendant to the possession of the premises was complete on the day fixed for the completion of the building for occupancy, and he had covenanted to pay rent, to be computed from that date, and could have maintained ejectment for the premises. The intention of the parties is clear from the instrument, and no further act was needed to elucidate it, such as taking possession. The case of *Regnart v. Porter*, 7 Bing. 451, relied on by the defendant, is like this case would have been had the factory never been erected. In that case the improvement stipulated for was never made, and the parties sought to be charged had never had enjoyment or had the opportunity to enjoy the premises according to the agreement.

2. The question of fact strenuously disputed at the trial was whether the building was completed ready for occupancy by March 1, 1892, in accordance with the plans and specifications, so far as applicable, and where not applicable whether it was built of proper material and in a reasonably safe and workmanlike manner,—in brief, whether there had been a substantial compliance with the contract on the part of the plaintiff; and the evidence was such as to call for proper instructions to the jury on this subject.

The court instructed the jury that, as to the work which was designated in the specifications, the question was whether or not there had been a substantial and full compliance with the specifications; and as to the walls, in respect to which there were no specifications, the test was whether or not they were erected and constructed in a reasonably safe and workmanlike manner, and of reasonably safe and proper material, for the known purposes for which the building was to be used. And after having directed the jury in respect to what effect the fact would have, if they so found it,

that after defects had been pointed out by the defendant,
the plaintiff promised to remedy them, and the defendant
agreed that if he did so he would accept the building, and
the plaintiff incurred a large sum of money in supplying the
defects, the court again repeated the instructions above set
forth, in substance, adding: "If, on the contrary, you find
that the work which was not specified has been done in a
manner which was *entirely unsafe,* unsatisfactory, and unfit
for the uses for which the building was designed, *and* if you
find that the work which was specified has been done in
such a way as to afford no substantial compliance with the
specifications, then you should find for the defendant."
Further, that if after changes were made to remedy defects
pointed out, "if a defect has since developed which must
have existed at that time (March 1, 1892), although not fully
developed, such as to make the building *absolutely unsafe*
for occupation and use as a trunk factory, you are to consider
that fact in determining whether there was a substantial
compliance with the contract, March 1, 1892;" and after
referring to the crack in the wall, caused by its settling un-
equally and the danger to the building on account of it, and
that it could not be considered a defect "unless it endangers
the standing and stability of the building for the uses for
which it was designed," the court further stated: "If you
are satisfied that the building *is in danger of tumbling down*
on account of the separation of the wall, . . . you are
at liberty to find for the defendant, *if you find the building
absolutely unsafe* by reason of a defect which has developed
since those changes were made;" that the previous condi-
tion of the building was unimportant, except as it bore on
its condition March 1, 1892, and its present condition, and
except so far as infirmities have since developed which
render the building *actually unsafe.* Subsequently the court
charged the jury that if by reason of the crack in the wall,
or anything else, the building had become unsafe by reason

of an original infirmity, they might find for the defendant, although it might have appeared to the contrary, "if the building was not in fact properly constructed so as to be a safe and proper place for his business at that time."

The instruction first given to the jury stated the rule of law correctly as to what would be a sufficient performance of the contract on the part of the plaintiff. The subsequent instructions on this subject are repugnant to and contradictory of this rule, and it was error to give them, requiring a reversal of the judgment. It does not require argument or the citation of authority to show that the defendant could defend this action on the ground that there had not been a substantial compliance with the specifications, or that the walls, in respect to which there were no specifications, had not been erected and constructed in a reasonably safe and workmanlike manner, of reasonably safe and proper material for the known purposes for which the building was to be used, without showing that, at the time the premises were tendered to him, either that the building was entirely unsafe, or that defects then existing by reason of the plaintiff's failure to substantially perform his contract, whether open or latent, and since developed, in whole or in part, had rendered it *absolutely unsafe* or *in danger of tumbling down*, or that it was *actually unsafe*. A building in either of these conditions would be untenantable, and, if it merely conformed to the requirements of these instructions, would be, in no just or proper sense, a substantial compliance with the obligations of the plaintiff under the contract.

Other points in relation to the admission or rejection of evidence do not require notice, as they may not arise upon another trial. For the errors noticed in the instructions of the court to the jury the judgment must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.