[Civ. No. 4461. First Appellate District, Division One.—March 19, 1923.]

JAMES G. ROHAN, Appellant, v. FRANK H. PROCTOR, Respondent.

[1] STATUTE OF FRAUDS—MEMORANDUM OF AGREEMENT FOR LEASE—ESSENTIALS.—A memorandum of agreement for a lease which is required to be in writing, in order to satisfy the statute of frauds must contain all of the essential and material parts of the lease which is to be executed thereafter according to its terms, and particularly must contain a definite agreement as to the extent and boundary of the property to be leased, a definite and agreed term, and a definite and agreed rental and the time and manner of its payment.

[2] ID.—COMMENCEMENT OF TERM.—A memorandum of agreement for a lease should define when the term of the tenancy is to begin.

[3] ID. — COMPLETION OF IMPROVEMENTS — BEGINNING OF TERM. — A memorandum of agreement for a lease which provides that the lease to be executed thereunder is to be for a term of ten years commencing on the completion of certain alterations and improvements, rather than at a fixed date, is sufficiently certain as to when said term is to begin to satisfy the statute of frauds.

[4] ID.—OFFER TO LEASE—PROVISO FOR IMPROVEMENTS BY OWNER—ACCEPTANCE.—A written offer to lease certain premises which is

made contingent upon the making of certain alterations and improvements by the owner is not fatally uncertain because of that proviso, where such offer is accepted by the owner.

[5] Id.—Failure to Define Alterations—Parol Evidence.—Where the written offer to lease certain premises is made contingent upon the making of alterations and improvements by the owner, and such offer is accepted by the owner, but the writings do not define what alterations and improvements the owner is to make, that deficiency may be supplied by parol evidence.

[6] Id.—Failure to Agree on Alterations—Subsequent Oral Agreement.—Where the complaint in an action for damages for breach by the owner of an agreement to execute a lease for a term of years shows that the parties had not, either prior to or contemporaneous with the making of the written agreement for the lease, come to any agreement or understanding, either written or oral, as to the kind or character of the alterations and improvements to be made by the owner upon the premises in question, but that they did not do so until several months after the date of said agreement, and this latter agreement was oral, such complaint does not state a cause of action.

[7] Id.—Kind and Character of Improvements—Beginning of Term—Certainty—Parol Evidence.—In order to the validity of a written agreement for a lease it must either be in itself certain as to the kind and character of the improvements to be made upon the premises, the completion of which would fix the beginning of the term, or it must be susceptible of being made certain by oral evidence showing the prior or contemporaneous understanding of the parties in that regard; but if the parties have come to no such understanding at the time the written agreement is made, the uncertainty of the writing in that regard cannot be removed by oral evidence of a later understanding, is fatal.

APPEAL from a judgment of the Superior Court of Alameda County. Joseph S. Koford, Judge. Affirmed.

The facts are stated in the opinion of the court.

Sullivan & Sullivan and Theo. J. Roche for Appellant.

Chapman, Trefethen & Chapman and Nusbaumer & Bingaman for Respondent.

RICHARDS, J.—This appeal is presented upon the judgment-roll and is from a judgment in favor of the defendant after an order sustaining his demurrer to the

plaintiff's last amended complaint, the latter having declined to further amend his pleading. The action is one for damages in a large sum alleged to have been caused by the defendant's breach of an agreement to execute a lease to certain premises in the city of Oakland. The agreement, which is in the form of a written offer to lease said premises on certain terms, which offer the defendant accepted upon its face, reads as follows:

"Oakland, California, July 17th, 1919.

"Mr. Frank H. Proctor,

"Union Savings Bank Building,

"Oakland, California.

"Dear Sir:

"I am prepared to make you the following proposal of lease on the ground floor of the property now known as No. 1728–1744 Broadway and the abutting land running through to Franklin Street approximately an area of one hundred (100) feet on Broadway by three hundred (300) feet deep to Franklin Street with a frontage on Franklin Street of one hundred (100) feet on the following basis of rental:

| First | year | $1000.00 | per | month. |
|-------|------|----------|-----|--------|
| Second | '' | 1250.00 | '' | '' |
| Third | '' | 1500.00 | '' | '' |
| Fourth | '' | 1750.00 | '' | '' |
| Fifth | '' | 2000.00 | '' | '' |

"Next five years $2250.00 per month and with an option of renewal for another ten years period of $2500.00 per month, providing that you alter the present ground floor space in the Broadway building and construct a suitable building on the Franklin Street property for my uses. These improvements to be subject to our mutual approval.

"I am prepared to furnish you with a cash bond of twenty thousand ($20,000.00) dollars as evidence of good faith of my fulfilling the terms and conditions of the lease to be drawn which would contain the usual safeguards and covenants.

"Kindly advise me immediately if the above offer is acceptable. If so I will deposit two thousand ($2,000.00) dollars with you as evidence of good faith on my part.

"As to the conditions of the other payments and the like, these are to be made according to the verbal arrangements that we have discussed.

"Yours very truly,

"JAS. G. ROHAN,

"Accepted by FRANK H. PROCTOR."

The plaintiff alleges in his said complaint that as to the provision of said agreement that the lease to be executed "would contain the usual safeguards and covenants," these were to be in accordance with the custom and usage prevailing in the city of Oakland at the time said agreement was made and were to cover and provide for the payment of rent in advance, for re-entry in case of tenant's default, for the surrender of the premises at the expiration of the term or of any renewal thereof in as good state and condition as reasonable use and wear thereof permitted, and for the further covenant that the lessee would not assign said lease without the written consent of the lessor. The plaintiff further alleged that some time after the offer and acceptance of said agreement the parties thereto came to an oral agreement as to the alterations to be made upon the ground floor of the building then upon said premises and also as to the building to be constructed by the lessor for the use of the lessee upon that portion of the premises fronting upon Franklin Street. The plaintiff further alleged that after the kind and character of said improvements had been thus orally agreed upon and the plans therefor approved by the parties, he deposited with the defendant the sum of $1,500 on account of the sum of $2,000 to be deposited by him as evidence of his good faith, which sum the defendant accepted, and that thereafter he tendered to the defendant the sum of $500 as the balance of said deposit, but the defendant refused, and has ever since refused, to accept the same. The plaintiff further alleged that prior to July 17, 1919, the date of said agreement for a lease, the plaintiff had discussed the matter of the cash bond provided for therein and the payments to be made on account thereof with defendant and had come to an oral understanding and agreement with relation thereto, which agreement the plaintiff proceeded to set forth at length in his complaint, and which he alleged himself to be at all times ready, willing, and able to perform. He then pro-

ceeded to allege that the defendant on February 17, 1920, repudiated said agreement and notified plaintiff of his intention not to perform the same nor the terms and conditions thereof, nor to execute said lease, to the plaintiff's damage in the sum of $500,000, no part of which had been paid. The defendant demurred to said last amended complaint upon the general ground and also upon the ground specifically that it appeared upon the face of said complaint that the agreement alleged to have been breached by the defendant was oral and was therefore void under the statute of frauds. The court sustained said demurrer and from the judgment which followed the plaintiff's declination to further amend this appeal has been taken.

[1] At the outset of this discussion it may be stated as settled law that a memorandum of agreement for a lease which is required to be in writing, in order to satisfy the statute of frauds must contain all of the essential and material parts of the lease which is to be executed thereafter according to its terms, and particularly must contain three essentials in order to its validity under the statute of frauds. These are: First, a definite agreement as to the extent and boundary of the property to be leased; second, a definite and agreed term; and third, a definite and agreed rental and the time and manner of its payment. (Jones on Landlord and Tenant, sec. 137a; *Dodd* v. *Pasch,* 5 Cal. App. 686 [91 Pac. 166]; *Levin* v. *Saroff,* 54 Cal. App. 285 [201 Pac. 961].) [2] It may also be taken to be well settled that as to the second of the above essentials the agreement for a lease should define when the term of the tenancy is to begin. (Taylor on Landlord and Tenant, 9th ed., sec. 70; *Manufacturing Co.* v. *Hobbs,* 128 N. C. 46 [83 Am. St. Rep. 661, 38 S. E. 26].) [3] The respondent contends that the agreement in question is fatally defective in the second of these essentials in that it contains no agreement as to the beginning of the term of the lease to be executed thereunder. It would seem to be true that the said agreement does not state when the term of the lease is to begin, but the question remains as to whether this omission is fatal to its validity under the statute of frauds. The lease to be executed under said agreement was to be for a term of ten years at a certain increasing rental for the first five years and with an option of renewal for an additional period of

ten years at a fixed rental specified therein. Its only uncertainty in this regard was as to the time when said term was to begin. This uncertainty arose primarily out of the fact that alterations and improvements were to be made by the landlord before the tenant could enter into the occupation and beneficial use of the premises, and that the writing did not contain a definite description of what said improvements were to consist of nor did it contain a fixed date when such improvements were to be completed. This, however, is not such an uncertainty as would render void a lease or an agreement to enter into one. It frequently occurs that changes and improvements are to be made in premises prior to the entry of the tenant into the possession and beneficial use thereof, and that the time when such changes and improvements are to be completed is of necessity uncertain. As that uncertainty is one which will be made certain by the completion of such improvements according to the agreement and understanding of the parties at the time, it will not have the effect of rendering void the lease or the agreement to enter into the same. In Jones on Landlord and Tenant, section 113, the rule is thus stated: "If a lease has a certain appointment of the number of years, although the commencement or the end of it is certainly appointed upon an uncertain time, yet such lease shall be good as a lease for years. When a lease is to run for a certain term of years it is not rendered invalid by the circumstance that it is to begin upon the completion of an unfinished building." The cases cited by the learned text-writer in support of this rule are quite similar as to their facts with the case at bar. In the case of *McClain* v. *Abshire*, 72 Mo. App. 390, the lease was for a term of five years beginning when the rooms in a certain building were ready for occupation. It was held a good lease. In the case of *Noyes* v. *Loughead*, 9 Wash. 325 [37 Pac. 452], it was held that a lease for a building for five years after completion was a good lease and was to be presumed to be a lease the term of which should begin from the completion of the structure. It was also held in *Billings* v. *Canney*, 57 Mich. 425 [24 N. W. 159], and in *Clarke* v. *Spaulding*, 20 N. H. 313. In *Hammond* v. *Barton*, 93 Wis. 183 [67 N. W. 412], the court upheld a written lease of a room in a building under construction, for five years, the court

holding that the element of certainty in the commencement of the term was satisfied by the completion of the building. The same principle was applied by the same court in the case of *Colclough* v. *Carpeles,* 89 Wis. 239 [61 N. W. 836]. [4] The respondent, however, contends that this agreement to enter into a lease is fatally uncertain because it is contingent upon the following proviso: "Providing that you alter the present ground floor space in the Broadway building and construct a suitable building on the Franklin Street property for my uses, these improvements to be subject to our mutual approval." It is the respondent's insistence that this proviso leaves it entirely to the whim of the landlord as to whether or not he will make the improvements in question and thus fulfill the condition upon which the future leasing of the premises depends. We do not so construe this proviso. The agreement here is in the form of an offer to lease the premises, provided the landlord will agree to make alterations and improvements. By the landlord's acceptance of the offer he agreed to make such alterations and improvements and by so doing put an end to that portion of the proviso. The agreement as thus consummated was an agreement on the part of the landlord to make alterations and improvements upon the premises and an agreement on the part of the tenant to lease said premises when such alterations and improvements were completed. [5] The respondent, however, further insists that this proviso, even as thus construed, is fatally uncertain in that it does not define what alterations and improvements the landlord has thus agreed to make and that this uncertainty cannot be supplied by parol without taking said agreement out of the statute of frauds. It must be conceded that the foregoing proviso in said agreement is uncertain in this regard, but it does not follow therefrom that this is such an uncertainty as would have the effect of avoiding the agreement to enter into a lease. The landlord, having agreed to make alterations and improvements in the premises for the tenant's uses, without specifying in the writing what those alterations and improvements were to consist of, the uncertainty in that respect was one which might have been removed by oral evidence as to the kind and character of the alterations and improvements which were within the contemplation and understanding of the parties to the written agreement at the time it was made.

The case of *Blahnik* v. *Small Farms Imp. Co.*, 181 Cal. 379
[184 Pac. 661], is an instructive case upon this point, for
while the facts differ somewhat from those of the case at
bar, the principle involved is the same. In that case the
parties had entered into a contract of sale of certain real
estate which contained the following stipulation: "The seller
agrees that he will have the roads in said division 'R' [of
which the land in question was a subdivision] constructed
during the fall of 1913 after the rains or when the ground
is able to be worked; and construct the necessary bridges."
The action was against the seller of the land for damages
for breach of the agreement of sale. Objection was made
to the sufficiency of the complaint in failing to describe
the kind and character of the work to be done by the seller
under the contract and to the sufficiency of the contract
itself, it being silent in that respect. The trial court re-
fused to permit the introduction of the oral evidence for
the purpose of showing what the agreement of the parties
was in that regard. In holding this to be error the su-
preme court said: "This ruling was erroneous. The con-
tract was altogether oral in regard to the character and
kind of work that was to be done upon the roads. If there
was any agreement on that subject, or any plan relating
thereto adopted by the defendant and acquiesced in by
the plaintiffs, it was not set forth in the contract. So far
as appears it was in parol only. Such an agreement would
be collateral and supplemental to the contract contained in
the writing, and as parol evidence thereof would not be
inconsistent with the contract and would not alter it in
any respect, evidence thereof would be admissible if material
to the issues. (*Sivers* v. *Sivers*, 97 Cal. 521 [32 Pac. 571];
*Daly* v. *Rudell*, 137 Cal. 676 [70 Pac. 784].)" It is to be
noted that in the case above cited the oral evidence offered
for the purpose of explaining away the uncertainty in the
writing as to the kind and character of the roads to be
constructed was in the form of conversations between parties
to the writing prior to or at the time of its execution.
[6] The respondent contends that the plaintiff's last
amended complaint is fatally defective in this very par-
ticular, since it appears upon the face of said agreement
that the parties thereto had not, either prior to or con-
temporaneous with the making of such written agree-
ment, come to any agreement or understanding, either

written or oral, as to the kind or character of the alterations and improvements to be made by the landlord upon the premises in question, but that, on the contrary, it affirmatively appears both upon the face of said complaint and of said agreement that the parties to said agreement for a lease had not theretofore arrived at any agreement or understanding as to the detail of said improvements and that they did not do so until several months after the date of said agreement, and that such later understanding and agreement between the parties was oral. It must be conceded that both the agreement and the complaint show this to be the fact. In the proviso in said agreement above quoted it is expressly stated that "these improvements are to be subject to our mutual approval," while in the plaintiff's complaint it is expressly alleged that the oral agreement and understanding between the parties as to the kind and character of said improvements was not entered into between the parties until several months after the written agreement was made. The plaintiff in thus interpreting the writing and in thus alleging that the kind and character of said improvements was to be and was a matter of subsequent oral understanding between the parties to said written agreement has failed to state a cause of action. [7] In order to the validity of the written agreement for a lease it must either be in itself certain as to the kind and character of the improvements to be made upon the premises, the completion of which would fix the beginning of the term, or it must be susceptible of being made certain by oral evidence showing the prior or contemporaneous understanding of the parties in that regard. But if the parties have come to no such understanding at the time the written agreement is made, the uncertainty of the writing in that regard is fatal, since it is an uncertainty in a respect essential to its validity which no amount of oral evidence as to a later understanding could remove. The effect of such evidence would merely be to create an additional oral agreement touching a vital and omitted essential of the writing and thus render the entire contract between the parties oral and hence of necessity obnoxious to the statute of frauds. (*Fly* v. *Cline et al.,* 49 Cal. App. 414 [193 Pac. 615]; *Dillingham* v. *Dahl-*

*gren,* 52 Cal. App. 322 [198 Pac. 832]; *Haviland* v. *Sammis,* 62 Conn. 44 [36 Am. St. Rep. 330, 25 Atl. 394]; *Mentz* v. *Newitter,* 122 N. Y. 491 [19 Am. St. Rep. 514, 11 L. R. A. 97, 25 N. E. 1044]; *Norris* v. *Blair,* 39 Ind. 90 [10 Am. Rep. 135].) The further effect of such evidence would be that of showing conclusively that the minds of the parties had not met at the time of the execution of such written agreement as to a matter essential to the validity of such agreement, viz.: As to when the term of the lease was to begin. The plaintiff in the instant case, in pleading that the details of the alterations and improvements of the premises was a matter which was left to the subsequent agreement of the parties and that such subsequent agreement was oral, has pleaded himself out of court.

The fact alleged in the plaintiff's last amended complaint that the defendant received the sum of $1,500 from the plaintiff after the oral agreement as to the details of the improvements had been arrived at could not serve to validate the otherwise void agreement for a lease for two reasons: First, that the consideration for said payment was not the making of the subsequent oral agreement, but was the acceptance of the original written offer, according to its express terms; second, the acceptance of money under an agreement void under the statute of frauds would not validate such agreement so as to permit a recovery thereon in an action at law for damages for its breach.

As to the appellant's averment that the defendant in repudiating said agreement for a lease was actuated by bad faith, it will suffice to say that no right of recovery could be based upon a defendant's bad faith in refusing to carry into effect a void agreement.

We do not deem a discussion of the other points urged by respective counsel necessary to the determination of this appeal.

Judgment affirmed.

Tyler, P. J., and St. Sure, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 17, 1923.