GREATER HOUSTON SUBURBAN CORPORATION v. DUPUY & MULLEN.
(No. 453.)

(Court of Civil Appeals of Texas. El Paso. May 6, 1915.)

CONTRACTS ⟝350 — ACTION FOR BREACH — SUFFICIENCY OF EVIDENCE—TERMS.

In an action to recover damages for breach of a contract to shell the streets in defendant's tract of land, divided into blocks and streets, silent as to the amount to be done, evidence *held* insufficient to sustain a finding of an agreement as to the quantity of shell to be placed upon the streets.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1819–1823; Dec. Dig. ⟝350.]

Appeal from District Court, Harris County; A. R. Hamblen, Special Judge.

Action by Dupuy & Mullen against the

Greater Houston Suburban Corporation. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Chas. Warnken and Sam, Bradley & Fogle, all of Houston, for appellant. Bryan & Bryan, of Houston, for appellees.

HIGGINS, J. Appellant owned about 200 acres of land in Harris county, known as Park Place, which it had divided into blocks, lots, and streets, and it entered into a contract with V. O. Ford to grub, grade, and clear the streets thereof and place culverts therein according to written specifications; there being approximately 8 miles of streets covered by the contract, the same varying in width from 40 to 124 feet. On the same date Ford submitted a proposal to surface the streets with shell, which reads:

"I herewith submit for your approval and acceptance the following proposition to shell your subdivision, known as 'Park Place,' to wit: I will furnish the pump shell, spread and roll same, in accordance with grades to be set by your engineer, on the basis of $2.05 per cubic yard, barge measurement unless otherwise agreed upon, and maintain same for sixty days."

The appellant accepted the foregoing proposal by indorsement, reading:

"Accepted this 10th day of November, 1911.
"Greater Houston Suburban Corpo.,
"By C. J. McCarty, Pres."

After performing a portion of the work called for by the first contract, Ford assigned both of same to Dupuy & Mullen, who assumed his obligations thereunder, appellant assenting thereto, and Dupuy & Mullen proceeded to perform the contracts. They graded the streets as required by the contract first mentioned and proceeded to surface the same with shell as required by the other. After placing 755 cubic yards of shell upon the streets they were stopped by appellant's orders.

Dupuy & Mullen thereupon sued, alleging that by the proposal to "shell your subdivision, known as Park Place," was meant that all the boulevards and streets in Park Place, including what was known as Park Place therein, was to be shelled; that said shelling contract under the facts alleged called for about 12,200 cubic yards of shell, and that they had only placed 755 cubic yards when they were unlawfully stopped by appellant from proceeding further with the contract; that they would have made a profit of 38 cents per yard upon the remaining 11,445 yards which should have been placed under said contract, amounting in the aggregate to $4,349.10, for which amount judgment was asked.

Defendant admitted that it entered into a contract with Ford to grub, grade, and clear the streets of Park Place, and the shelling contract, evidenced by the proposal above indicated and its acceptance of it, but that said proposal and acceptance did not show the entire agreement with reference to the amount of shelling to be done thereunder; that at the time it entered into the contract to grub, grade, and clear the streets, it did not know how many of its streets it desired to have surfaced with shell, and so informed Ford, but it did desire to so surface a portion of same which is described in the answer, and would probably desire to surface or partly surface more in the future, if the sale of lots justified it in so doing and it became expedient; that Ford proposed to furnish such shell as defendant might desire to be placed, at the price and under the conditions named in the proposal, provided defendant would assure him that it would use at least 500 yards of shell; that defendant agreed with Ford that it would take from him under said proposal at least 500 yards of shell, and so much more as defendant in the future might determine it wanted; and that this constituted the contract between defendant and Ford with reference to shelling.

The substituting of Dupuy & Mullen for Ford and their subrogation to his rights under the contract were admitted; likewise was admitted the allegation of plaintiffs that a map of the addition had been delivered to them by it in reference to the work, which was to be performed by them in the completion of Ford's contract, but denied that the delivery of the map was intended to be, as by plaintiffs alleged, a representation that all of the streets and boulevards in Park Place were to be shelled; and it was averred that plaintiffs were informed as to the amount of shell which they had agreed with Ford to take as above stated, viz., at least 500 cubic yards, and as much more, at their option, as future developments would warrant.

By supplemental petition, appellees alleged that if the defendant had such an agreement with Ford with reference to furnishing shell as is alleged, viz., to the effect that defendant was only required to furnish not exceeding 500 yards of shell, that such fact was not known to these plaintiffs, and that they, in agreeing with defendant, as alleged in their petition, simply used the Ford proposition as a basis of an agreement made between the plaintiffs and the defendant, and that these plaintiffs would not have entered into or taken over the contract of Ford for the grading, filling, etc., of Park Place, but for the agreement made by the defendant with plaintiffs that they were to be permitted to shell the streets and boulevards of Park Place, as is fully set out in plaintiffs' petition, and that, if Ford and defendant had any such agreement as alleged by the defendant, these plaintiffs were not bound by it, and did not obligate themselves to be bound by that part of the contract which limited the amount or quantity of shell that was to be placed upon said streets; that certain specifications constituted the contract between plaintiffs and defendant, and that plaintiffs and McCarty had same when making said contract, and the three papers together showed clearly the

length of the streets to be shelled; and it was verbally understood and agreed between plaintiffs and defendant, as is fully alleged in plaintiff's petition, and as was also stated to the plaintiffs by the engineer of the defendant, under whose directions the work was done, that said 6,600 feet of street, which was 134 feet wide, should have an average of 14 feet on each side of said street, or a total of 28 feet, with an average depth of 5 inches of shell placed thereon, making a total of 3,080 yards of shell on that street; that said 16,660 feet of 80-foot streets was to have shell 12 feet wide and an average of 5 inches deep, or a total of 6,764 yards of shell, and that said 10,660 feet of 50-foot streets was to have shell 12 feet wide, and an average of 5 inches in depth, or a total of 2,125 yards of shell placed thereon, making a total of 11,-969 yards of shell to be placed on said 50-foot, 80-foot, and 134-foot streets; that it was also in fact agreed that said 40-foot streets should also be shelled 12 feet wide and 5 inches deep, but afterwards by mutual agreement it was agreed that plaintiffs would waive their right to shell said 40-foot streets.

The statement of the pleadings made is sufficient for a proper understanding of the questions presented by this appeal. It is apparent that the shelling contract evidenced by the written proposal and acceptance is silent as to the amount of shelling to be done, and resort was had to extrinsic evidence to show the agreement of the parties in respect thereto. The jury was instructed:

"That in order for there to have been a contract between plaintiff and defendant with reference to the shelling of streets in Park Place, which would be binding upon defendant, the minds of plaintiffs and McCarty must have met as to all the material elements necessary to constitute such contract, and each must have had at the time the same understanding as to the quantity of shell to be placed, and unless you find from a preponderance of the evidence that there was a mutual agreement and understanding between plaintiffs and said McCarty as to the quantity of shell to be placed by plaintiffs in Park Place, if any, you will find that there was no such contract."

With the injunction to be governed by this instruction, they were then instructed to answer special issues, and in response thereto the jury found that there was an agreement between plaintiffs and defendants as to the quantity of shell to be placed by the former in Park Place, and that it was agreed 11,002 cubic yards were to be placed on the streets and boulevards therein; that only 755 yards were so placed, when plaintiffs were stopped by defendant's orders. Upon these and other

findings unnecessary to state, the judgment was rendered in favor of Dupuy & Mullen.

It is assigned as error that the evidence is insufficient to support the finding of the jury that there was an agreement between plaintiff and defendants as to the quantity of shell to be placed in Park Place; that the agreement of the parties with reference to the shelling was not sufficiently definite to enable the jury to find that there was 11,002 cubic yards of shell agreed to be placed upon the streets. This contention must be sustained. There is sufficient evidence to warrant the jury in finding that it was agreed that all of the streets in Park Place were to be shelled as they were graded, but it does not appear that there was any definite agreement between the parties as to the width of the shelling to be placed in the streets and the depth thereof. In the absence of such evidence, it was, of course, impossible to determine just how many cubic yards of shell was to be placed upon the streets, and unless there was a definite agreement between the parties, so that it could in some manner be ascertained how much gravel was to be placed, then the minds of the parties never met upon an essential element of the contract. It was testified by appellees that the engineer, Winfrey, gave them a cross-section showing the width and depth of the gravel which was to be placed; but Winfrey testifies he did that for the accommodation of appellees, and that he was merely the engineer, supervising the grading, grubbing, and clearing contract, and had nothing to do with the shelling contract. He disclaimed any authority whatever to represent appellant with reference to the shelling contract, and there is no evidence of any holding out by the appellant of Winfrey as its representative in respect to the shelling contract, so as to bind them by any statement or representations which he may have made. It is unnecessary to detail at length the testimony of the parties upon the issue involved, but it is sufficient to say that a consideration of the entire testimony leads to the conclusion that the minds of the parties did not meet upon a material element necessary to constitute the contract, in that they did not have an understanding as to the quantity of shell to be placed upon the streets; it being apparent that there was no agreement as to the width of the shelling and the depth thereof.

The other errors assigned do not seem to present reversible error.

Reversed and remanded.