GIOVANNI PALOMBI, Respondent, *v.* ANNA VOLPE, Appellant.

First Department, December 23, 1927.

**Landlord and tenant — lease — action by tenant to compel specific per-
   formance of contract to lease — one term of contract provided for
   opening or passageway through hall of house — tenement house depart-
   ment refused to permit opening at point where there had been opening
   which had been closed — minds of parties never met on place of opening
   which was essential element of contract — contract will not be enforced
   — partial specific performance denied.**

The plaintiff, as tenant, and the defendant, as landlord, executed a memorandum
   of lease, one of the terms of which read as follows: "An opening or passage way
   through the hall of the house." The plaintiff entered into partial possession
   of the premises but owing to a dispute concerning the passageway the parties
   never executed a formal lease and the plaintiff never obtained possession of the
   other portion of the premises. This action is to compel the specific performance
   of the memorandum to lease.

The plaintiff is not entitled to a judgment decreeing the specific performance of
   the memorandum, for it appears that prior to the time of the execution of the
   memorandum a passage into the hall had been closed by order of the tenement
   house department, and that consent to reopen that passage could not be obtained;
   that the parties for some time negotiated as to the place of opening, an essential
   element of the contract, but failed to come to any agreement in reference thereto;
   that the memorandum did not state the exact place where the opening was to
   be made and that to make the opening at the point where it was originally
   made would involve the landlord in a violation of the Tenement House Law.

Partial specific performance cannot be decreed in the absence of an agreement on
   all of the essential terms of the contract. Partial performance can be decreed
   only where the terms of the contract have been agreed to and the performance
   of some term has been rendered impossible after the execution of the agreement,
   and where it appears that the agreement is severable.

MERRELL, J., dissents.

APPEAL by the defendant from a judgment of the Supreme
Court, entered in the office of the clerk of the county of New York
on the 18th day of November, 1926.

*Gilbert M. Levy,* for the appellant.

*Samuel Mazzola,* for the respondent.

FINCH, J. The question presented by this appeal is whether a
particular term of an alleged contract had been agreed upon so
as to entitle the plaintiff to specific performance of the contract.
The action was brought for specific performance of a lease of real
property. After a trial at Special Term, the court decreed specific
performance. The decree cannot be sustained because the term
of the written memorandum is indefinite and the record does not
show that the parties ever reached an agreement as to the term
of the contract in dispute.

The facts, in so far as necessary to show the reasons for the decision, briefly are as follows: On October 30, 1923, the defendant was the owner of certain premises and on that date, after previous negotiations with the plaintiff, signed a memorandum in Italian, of which the following is a translation:

" I, the undersigned, Anna Volpe, declare to lease the restaurant hall to Mr. Giovanni Palombi at No. 402 East 116th Street, for the period of five years together with five years additional as optional and give the said Mr. Palombi permission to place electric sign or other kind of sign.

" 2. An opening or passage way through the hall of the house.

" 3. To transfer the kitchen of the restaurant to the floor above.

" 4. To also use the floor above for dining.

" 5. The exclusive use of the dumbwaiter.

" 6. The right to sell or sublet the business.

" 7. To give to Mr. Palombi the floor or rooms above the restaurant (well cleaned) as soon as Mr. Giosuele Natella moves out.

" 8. To give an inclosed space in the cellar to store stock used in his business.

" 9. To give heat.

" 10. Mr. Palombi shall give two months' deposit for the restaurant hall and the current month, which receipt is hereby acknowledged of $100 as security for the performance of the present conditions and shall be included in the lease which is to be made at the earliest possible moment.

" NEW YORK, 30th of October, 1923.

" (Signed) ANNA VOLPE,
       " GIOVANNI PALOMBI.

" P. S. The monthly rent for the hall (ground floor) will be $80 for the first year and at the rate of $100 per month for the remaining term. For the rooms above the restaurant the rent shall be $50 per month, and when the landlord shall place a new bath she shall receive $5 per month (additional) for only 12 months.

" (Signed) ANNA VOLPE,
       " GIOVANNI PALOMBI."

The following day the plaintiff moved into a portion of the premises, namely, the ground floor, and has occupied and paid rent for the same ever since. Owing to a dispute concerning the location of the passageway through the hall, touched on in the alleged memorandum agreement, the parties never executed a formal lease of the premises and the plaintiff never obtained possession of the other portions of the premises. Upon this record the whole dispute concerns the passageway through the hall. When

the plaintiff went into possession of the ground floor portion of the premises, he found that a doorway leading from the kitchen into the hallway had been bricked up. The plaintiff insisted upon having the opening referred to in the alleged memorandum agreement located at this point. It appears that the opening in question had been closed up about a year previously by the order of the tenement house department, and the defendant declined to consent to reopening the same unless the consent of the tenement house department could be obtained. This the parties were unable to obtain. The plaintiff nevertheless insisted upon having the defendant consent to an opening at this point. This the defendant refused to give. We are thus brought to examine the clause in the memorandum relating to the passageway. In so far as the clause in the alleged memorandum agreement in itself is concerned, it is clear that it is too indefinite to constitute an agreement, because, from its language, it is impossible to tell where the opening was to be located. This defect in the writing might have been overcome if it appeared in the record that the parties had in fact agreed upon the location of a passageway so that the language could be said to have been made definite by the acts of the parties under it. (*Spiritusfabriek Astra* v. *Sugar Products Co.*, 221 N. Y. 581.) The plaintiff apparently contends that the parties did in fact agree upon the location of the opening, but the record fails to bear out this contention. The record shows that the defendant positively denied that any definite place for the opening was agreed upon. In fact even after two months' subsequent discussion the parties were still unable to agree upon the location for the door which would connect the upper and lower portions of the demised premises and was thus an essential term of the proposed agreement. There was thus no meeting of the minds upon a completed agreement as proposed in the memorandum. The plaintiff's own testimony directly corroborates the defendant in this regard. The plaintiff testified: " Q. What was said between you and Mrs. Volpe about the opening of a door from the restaurant into the hall? A. She insisted on not having that door opened, but as that was the condition written in the contract I contended for that. Q. What door opening was that? A. The door in the back of the restaurant which communicated with the hall, which is now in existence. Q. Was that door closed up with brick? A. Yes, and when I opened the door I saw a wall in front of my eyes and then I insisted to have that opened up."

In another portion of the plaintiff's testimony the following appears: " We were trying to reach a settlement — so much so that we went even downstairs into the cellar to see whether

an opening could be made there. Q. How long was this after October 30, 1923? A. It was about the end of January, 1924. Q. Was anything said about that door opening at the time? A. Yes. We were trying to settle that point because Mrs. Volpe did not want to give me that opening; she said she did not want to give it to me — I don't know for what reason."

It thus clearly appears from the corroboration of the defendant's testimony by that of the plaintiff that the parties never reached an agreement at the time of the making of the memorandum with respect to the location of the passageway and thereafter, in attempting to act under the memorandum, were unable to agree as to where the opening should be placed. As against this positive testimony, the plaintiff urges a possible inference of agreement as to the location of the opening from the fact that the attorneys of both parties were trying to have the tenement house department approve of making a passageway where the door previously had been located, to which efforts it appears the defendant had consented. Any such inference, however, is offset by testimony that the defendant would not consent unless the tenement house department approved and by the direct corroboration of the defendant's testimony that there had been no such agreement by the testimony of the plaintiff as above noted, so that any finding to the effect that the parties had reached an agreement as to the place of such opening when the memorandum agreement was signed or thereafter, is against the weight of the evidence. It does further appear that the plaintiff made an opening by force and that because of this the tenement house department filed a violation against the premises. The effect of the decree appealed from, therefore, is to place the defendant in a most unfortunate situation, since by said decree she must specifically consent to permit an opening which constitutes a violation of the Tenement House Law and apparently is prevented by said decree from protecting herself against the consequences of continuing to violate said law.

The plaintiff urges that he is entitled to have a decree of partial specific performance in that the plaintiff is willing to take the premises and waive that portion of the agreement relating to the passageway or reserve a claim for damages in respect thereto. A complete answer to this contention on the part of the plaintiff lies in the fact that the aforesaid term of the agreement relied upon, was never agreed to. The parties, by their own acts, demonstrated that this term was an important element of the transaction. The defendant not only has consistently refused to consent to the opening in question, but has declined to deliver

possession of substantial portions of the premises and the parties have been unable to agree at least in these respects to the provisions of a lease between them. The case thus falls within the principle that specific performance of a contract will not be decreed where an essential term has been left open for future agreement. To decree specific performance of such a contract would in effect be the making of a contract by the court for the parties. (*Ansorge v. Kane*, 244 N. Y. 395; *Keystone Hardware Corp. v. Tague*, 246 id. 79.) As was said by Judge O'BRIEN in *Keystone Hardware Corp. v. Tague (supra)*: "We have decided that if a material element of a contemplated contract is left for future negotiations, there is no contract enforcible under the Statute of Frauds."

The doctrine of a partial specific performance applies where an agreement has come into existence and thereafter, for some reason, one of its terms cannot be performed. If the agreement is severable and the circumstances permit, it is possible for the plaintiff to have a partial performance of such portions as can be performed. The case at bar, however, is not such a case because here the agreement never fully came into being. If the parties by their acts ·or otherwise have made a different or compromise agreement pending the determination of this action, that is a different issue altogether. It does not suffice to change the principles applicable to the issues presented by this record.

Findings of fact inconsistent with this opinion should be reversed and new findings made and the judgment appealed from reversed, with costs and the complaint dismissed, with costs.

DOWLING, P. J., McAVOY and PROSKAUER, JJ., concur; MERRELL, J., dissents.

Judgment reversed, with costs, and the complaint dismissed, with costs. Settle order on notice.