[L. A. No. 13326. In Bank.—August 29, 1932.]

NATIONAL CITY FINANCE COMPANY (a Trust) et al., Appellants, v. WILLIS O. LEWIS, Respondent; JOHN E. FRYMIER et al., Interveners and Appellants.

Samuel A. Miller and Paul J. Ziegler for Appellants.

Roy Maggart and Walter J. Richards for Interveners and Appellants.

Euler & Subith, Louis J. Euler and Fred E. Subith for Respondent.

TYLER, J., *pro tem.*—Action to recover the sum of $87,550 upon twelve promissory notes alleged to have been executed by defendant to plaintiffs. Plaintiff National City Finance Company alleges itself to be a common-law trust, organized under a declaration of trust dated the fourteenth day of June, 1924, with E. L. Junod, John L. Junod and Myron J. Sophy as its trustees, and doing business under the name of National City Finance Company. Defendant, answering the complaint, alleged payment. As a separate defense he further alleged that at the time of the execution of the notes he delivered to plaintiffs 1700 shares of the preferred stock and 850 shares of the common stock of the Vanderbilt Newspapers, Inc., as collateral security for the payment of the notes sued upon. He then alleged that he had consented to have the said collateral stock sold, and plaintiffs did sell the same and received a sum therefor in excess of the face value of the notes. In addition thereto he alleged there was a total failure of consideration for the execution of the notes. Thereafter John E. Frymier and Charles F. Keefe filed complaints in intervention, alleging themselves to be the owners by assignment of various of the notes set up in the complaint. Defendant filed an answer

thereto, alleging lack of title in the interveners, and in addition thereto he filed a cross-complaint in which he asked for an accounting of the sums received by plaintiffs from the sale of the stock held by them as collateral. After trial, judgment went in favor of plaintiffs and interveners. Defendant moved for and was granted a new trial. Thereafter, defendant applied for and was granted permission to file an amended answer to the complaint, and to the complaints in intervention. Under his amended pleadings he charged, among other things, that plaintiffs, upon receiving the stock deposited with them as security for the payment of the notes, had immediately sold the same for a sum in excess of the amount of the notes, contrary to their agreement; he also alleged that the notes were executed without consideration. As an additional, separate and distinct defense he alleged that they were secured by fraudulent representations in the following manner: That plaintiff E. L. Junod, as the agent and trustee of plaintiff company, represented to him that such company was connected with the National City Bank of New York, and that the two organizations were identical in ownership and management; that, relying upon these statements, he was induced to execute the notes. He further alleged that plaintiffs had no legal capacity to sue or maintain the action for the reason that the name "National City Finance Company" was a fictitious name, and the plaintiffs E. L. Junod, John L. Junod and Myron J. Sophy, named as trustees of the company, had not complied with the provisions of sections 2466 and 2468 of the Civil Code pertaining to the filing and publication of a certificate of doing business under a fictitious name. Under his amended answer to the complaints in intervention, he denied that interveners held title to any of the notes and he further alleged that interveners took with knowledge of the facts surrounding the execution thereof.

Trial was had and it appeared in evidence that in the year the plaintiff trust was organized the Vanderbilt Newspapers, Inc., was engaged in the business of publishing a newspaper in Los Angeles known as the "Illustrated Daily News", and was offering its stock for sale to the public at $100 a unit, under a permit issued by the corporation commissioner, providing that it might sell its stock at the price stated and might accept in payment thereof fifty per cent in

cash and the balance in notes of the subscriber. One Harvey was the executive head of the newspaper company which had engaged the services of James O. Allen, Inc., as its fiscal agent in selling its stock to the public. This agency had in its employ a salesman named Simpson. Some time prior to the execution of the notes in question, Harvey and Simpson had induced the defendant W. O. Lewis, an elderly and wealthy man, to subscribe for $30,000 worth of the stock. This transaction is not here involved. Shortly thereafter Simpson again approached defendant and induced him to subscribe for an additional $30,000 worth of stock. In payment thereof he executed three several promissory notes, each of which was in the sum of $5,150, payable to plaintiffs, and these notes were thereupon delivered by defendant to plaintiffs, together with the $30,000 worth of stock in the newspapers as security for the loan made by plaintiffs. Plaintiffs then paid to Vanderbilt Newspapers, Inc., the sum of $15,000, which the newspaper company credited to defendant on his purchase. Shortly thereafter defendant was again approached and induced to subscribe for a further $40,000 worth of stock. To make payment thereon he executed to plaintiffs four promissory notes each in the sum of $5,150. Plaintiffs thereupon paid to the Vanderbilt publication, on behalf of defendant, the sum of $20,000, which was credited to defendant on this subscription. Again, and for the fourth time, defendant was induced to subscribe for additional units at the price of $100,000. To make payment of this subscription he delivered five notes to plaintiffs, each in the sum of $10,300. Thereupon plaintiffs paid to the newspaper company the sum of $40,000 in cash, and defendant was credited with $50,000 by the newspaper on this subscription, plaintiffs receiving the difference of $10,000 as a commission from the newspaper company for making the sale of the stock.

Under all of these transactions, defendant deposited the stock he had received on account of his various subscriptions with plaintiffs as security for the loans. Thus there was a total of $170,000 worth of stock pledged as security for $87,550 worth of notes. As stated, in each of the transactions plaintiffs loaned defendant one-half of the cost of the stock, the excess amount being for interest for six months in advance, at six per cent. Thereafter defendant failed to

pay further interest on his notes, and this action was brought to obtain recovery upon the various notes.

It further appeared in evidence that plaintiffs had made false representations, through Junod, to defendant concerning their connection with the National City Bank of New York. It also appeared that while the plaintiffs were authorized to sell the stock, Junod had assured defendant that they would not exercise this right unless the stock depreciated in value. Other evidence shows that, notwithstanding this agreement, Junod fraudulently sold the stock, immediately upon receiving it, for a sum less than its cost price, but in an amount in excess of what had been advanced thereon, and out of the sum so received the advances or so-called loans had been made, and the difference retained by Junod. It likewise appeared that the interveners had placed valuable stock with Junod as security for loans made to them, and that their security had been immediately disposed of and a "loan" made to them out of the proceeds of such sale. There was also evidence to the effect that when Junod demanded additional interest on the notes, which had been fully paid through the fraudulent acts of Junod, defendant had offered to pay him the full amount of his notes, at the same time demanding his stock. Junod did not possess it, he having disposed of the same in the manner above indicated, and he could not deliver it. Defendant thereupon accused Junod and Harvey of having defrauded him and of having loaned him his own money which they had received from the sale of his stock at a depreciated price.

A further discussion of the evidence would answer no useful purpose. The trial court found, among other things, that the notes in question were procured through fraud and misrepresentations; that defendant had relied upon such misrepresentations and had been deceived in the execution thereof, and further that, at the time of the making of the notes, plaintiffs did not intend to return the stock. The court further concluded that National City Finance Company, E. L. Junod, John L. Junod and Myron J. Sophy had no legal capacity to maintain the suit, having failed to comply with the provisions of sections 2466 and 2468 of the Civil Code requiring the filing of a certificate when doing business under a fictitious name. It also found defendant not to be entitled to an accounting. Judgment

followed in favor of defendant and against plaintiffs and interveners.

The appeals are by plaintiffs and interveners from the judgment. Several grounds are urged for a reversal. ■ It is claimed that the trial court was influenced in rendering the judgment it did by the fact that Junod, as agent of the plaintiffs, had been found guilty and sentenced to the penitentiary at Folsom for his fraudulent transactions in managing the affairs of the National City Finance Company, and because of the further fact that the transaction as an entirety seems to be tainted by fraud. Whatever effect, if any, the conviction of Junod had on the mind of the court in reaching its conclusion we do not know, but certain it is, considering the evidence and all the surrounding circumstances, together with the reasonable and legitimate inferences to be drawn therefrom, that Junod's acts were but mere tricks and devices used by him as a means of fraudulently obtaining possession of securities for the purpose and with the intent of feloniously appropriating the same to his own use. The evidence speaks for itself and fully supports the finding of fraud.

■ Plaintiffs further claim that the trial court erred in granting defendant a new trial after the first trial of the action. The matter is not before us. The action was tried by the court sitting without a jury. Under such circumstances no appeal lies from the order, and appellants have noticed none. Moreover, such an order is not subject to review on an appeal from the judgment rendered on the second trial. (*Furlow Pressed Brick Co.* v. *Balboa L. & W. Co.,* 186 Cal. 754 [200 Pac. 625].) ■ Nor did the court err, as claimed, in granting defendant's motion to file his last amended answer. Such a motion is addressed to the sound discretion of the court in furtherance of justice. Trial was had eight months after the amended answer was filed, and the record shows that plaintiffs were not prejudiced or injured by the granting of the motion.

A further discussion of the case is unnecessary. ■ Interveners herein acquired title to the various notes recited in their complaints after maturity. They therefore stand in no better position than plaintiffs, and the judgment that they take nothing as against defendant was proper. Defendant at the trial claimed that the deposit by him of his

stock with plaintiffs constituted a pledge, and that the stock having been sold, he was entitled to an accounting. The trial court denied him this relief. Upon what ground it does not appear. However, respondent waives this point, considering the fact that the National City Finance Company is bankrupt and a recovery against it is hopeless. Considering the conclusion we have reached, it is unnecessary to consider or discuss whether or not the action should have been abated for the reason that plaintiff National City Finance Company was doing business under a fictitious name, for which reason it should have filed the certificate required by section 2466 of the Civil Code.

The judgment is affirmed.

Waste, C. J., Shenk, J., Curtis, J., Preston, J., Langdon, J., and Seawell, J., concurred.

Rehearing denied.