[L. A. No. 18633.   In Bank.   July 15, 1943.]

WILLIAM J. FRIEDMAN et al., Respondents, v. THOMAS M. BERGIN et al., Appellants.

Mott & Grant, Kenneth E. Grant and Harry C. Cogen for Appellants.

Desser & Rau for Respondents.

TRAYNOR, J.—In a contract executed April 4, 1937, the Del Mar Turf Club granted defendant Thomas Bergin the right to dispense all food, liquors, soft drinks, cigars, cigarettes, and other commodities, and to operate a cafe for employees, at a race track at the San Diego County Fair Grounds, at Del Mar, California. On April 24, 1937, Bergin signed an instrument reading as follows: "Received of William J. Friedman and Alex Charles Goodman, the sum of two thousand dollars ($2,000) in consideration for the following concessions at the Del Mar Turf Club: Cigarettes, cigars, candy, checking, including all lavortories (sic); for the term of five years commencing with the 1937 season and ending with the season for the year 1941. This agreement is to be followed by a formal contract on the same basis as that between the Del Mar Turf Club and the undersigned concessionaire." A formal contract was twice tendered plaintiffs Goodman and Friedman, but according to their testimony they rejected it because it contained no clauses covering their understanding that they were to receive an option to renew for five years, and that Bergin would return the $2,000 to plaintiffs if racing were discontinued during the term of the contract. Although no formal contract was executed, plaintiffs operated the concession at the track for three years, making a profit of $4,198.61. The greater part of plaintiffs' sales were made in stands built by Bergin in the grandstand, and operated by Bergin's employees. Plaintiffs' sole function in connection with these stands was to provide the goods that were sold there. Bergin accounted to plaintiffs each night for the sales of such goods, and paid the proceeds to plaintiffs, less 16 2/3% of the candy sales, which he retained, and 3% of plaintiffs' total sales to cover the sales tax. Plaintiffs' sales in other parts of the track were made by girls who circulated through the crowd. Plaintiffs relied on Bergin to make all necessary arrangements for retail licenses, social security and unemployment insurance payments, industrial accident insurance, and sales tax.

During part of this period, Bergin acted through the Del Mar Caterers, to whom he had assigned his general concession from the Del Mar Turf Club. On April 24, 1940, the, Del Mar Caterers assigned this concession to defendants Anderson and Van Steen, informing plaintiffs accordingly. Anderson and Van Steen were unwilling to continue the previ-

ous arrangement but offered to use their own employees and stands for the sale of plaintiffs' goods in return for 50% of plaintiffs' net profits. Plaintiffs acquiesced, and, through agents, commenced operating the concession. Anderson and Van Steen, however, not only refused to give nightly accountings but insisted that plaintiffs be responsible for their own licenses, social security and unemployment insurance payments, industrial accident insurance, and sales tax. After two or three days plaintiffs discontinued operations. Judgment was given in their favor in an action for breach of contract and defendants appeal. The defendant Anderson died during the pendency of the action and his executrix, Beulah Anderson, was substituted as defendant. After proceedings for new trial, the judgment was modified in certain particulars not here material. Subsequently, by stipulation of the parties, an order *nunc pro tunc* as of the date of entry of judgment was made striking from the judgment the name of defendant Del Mar Caterers, who by clerical error had been included therein.

The contract that plaintiffs seek to enforce was to be performed over a period of five years and is within the statute of frauds. (Civ. Code sec. 1624 (1).) Therefore, only if the instrument executed on April 24 contains the material terms of the contract may plaintiffs recover. (*Fritz* v. *Mills,* 170 Cal. 449 [150 P. 375]; *Zellner* v. *Wassman,* 184 Cal. 80 [193 P. 84]; see 12 Cal.Jur. 901; Restatement, Contracts, sec. 207; 2 Williston on Contracts, (1936) p. 1618.)

The trial court found that the only agreement between plaintiffs and Bergin was that of April 24, 1937. That finding necessarily implies that the terms of the actual arrangement under which the concession was operated were agreed upon at that time and were intended to be a part of the contract then made. Although plaintiffs and Bergin may have agreed to these terms when they signed the memorandum, they did not include them therein. The memorandum does not state that plaintiffs were to have the right to sell their wares through Bergin's stands and Bergin's employees, that plaintiffs were to receive nightly accountings, or that Bergin was to pay plaintiffs' licenses, social security and unemployment insurance payments, industrial accident insurance and sales tax. There is no mention in its two sentences of Bergin's right to retain 16 2/3% of plaintiffs' re-

ceipts from candy sales. The actual operation of the concession involved the practical construction, not of the terms of the memorandum, but of material terms not expressed within it. (See *Niles* v. *Hancock,* 140 Cal. 157 [73 P. 840]; *Edgar Bros. Co.* v. *Schmeiser Mfg. Co.,* 33 Cal.App. 667 [166 P. 366]; *Wineburgh* v. *Gay,* 27 Cal.App. 603 [150 P. 1003]; *Dillingham* v. *Dahlgren,* 52 Cal.App. 322 [198 P. 832]; *Enlow* v. *Irwin,* 80 Cal.App. 98 [251 P. 658]; *Santoro* v. *Mack,* 108 Conn. 683 [145 A. 273]; 2 Williston on Contracts, (1936) p. 1645.)

No contention is made that the reference to the contract between Bergin and the Del Mar Turf Club was intended to amplify the memorandum through the incorporation of that contract. The contract contained a clause requiring Bergin to erect his own facilities. A like clause in a contract between Bergin and plaintiffs would have required plaintiffs to erect the facilities; yet the only breach found by the trial court was that plaintiffs were denied the use of stands erected by Bergin. The Del Mar Turf Club had the right to terminate Bergin's contract if a named officer of the club regarded his services as unsatisfactory. Bergin was required to post $5000 as bond for performance, to pay his own sales tax and to comply with all laws, presumably including Workmen's Compensation and Social Security Laws. Plaintiffs, however, relied upon Bergin to pay such costs as taxes, licenses, and workmen's compensation and social security insurance. They were never asked to post bond, and there is no indication that any belief that their services were unsatisfactory would be sufficient grounds to permit Bergin to terminate the contract. The reference to the Del Mar contract suggests only that it was to be a model in form for the formal contract to be executed, and affords no clue as to how far the parties proposed to copy the Del Mar contract.

■ Plaintiffs explain the absence from the memorandum of the terms of the arrangement under which they operated on the ground that those terms were the result of a parol modification of the contract. They testified that in July, at the opening of the 1937 racing season, Bergin told them that they could not erect their own stands, but must work through his. Plaintiffs testified that Bergin also told them that he would be responsible for such costs as taxes, licenses, and workmen's compensation and social security insurance They therefore contend that the memorandum was a com-

plete statement of the contract before its modification. Since the only breach found, however, was the denial of plaintiffs' right to use the stands erected by Bergin, plaintiffs must rely upon the modifications in order to recover. These modifications were not made in writing, and a parol promise, performable over a five-year period, is within the statute of frauds whether or not it is a modification of another contract. (See *Twohey* v. *Realty Syndicate Co.*, 4 Cal.2d 379 [49 P.2d 819]; Notes, 118 A.L.R. 1511; 29 A.L.R. 1095; 17 A.L.R. 10; 9 Wigmore on Evidence, (1940) p. 177.)

■ Plaintiffs also contend that a concession contract is like a lease, and rely on *Beckett* v. *City of Paris Dry Goods Co.*, 14 Cal.2d 633 [96 P.2d 122], for the proposition that an insufficient description of the premises leased may be aided by parol evidence. Like other contracts, however, a leasehold contract must comply with the statute of frauds. (*Wineburgh* v. *Gay, supra; Enlow* v. *Irwin, supra; Rohan* v. *Proctor*, 61 Cal.App. 447 [214 P. 986].) The opinion in the Beckett case does not discuss the statute of frauds and shows that the court had before it a detailed written lease, involving no omissions comparable to those made in the writing on which plaintiff relies.

The judgment and the order modifying judgment after proceedings on motion for new trial are reversed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Schauer, J., concurred.