[Civ. No. 17302. Second Dist., Div. Three. Mar. 15, 1950.]

ART ELLIS et al., Respondents, v. SEYMORE KLAFF
et al., Appellants.

Nordman & Berenson and Gustafson & Rosenmund for Appellants.

William A. Reppy and Neil D. Heily for Respondents.

SHINN, P. J.—This action was brought against defendant Adams, as lessee, and defendants Rose and Klaff, as assignees, for rent and for damages for the alleged breach of a covenant in a written lease. The first cause of action of the complaint alleged the violation of a covenant for construction by the lessee of "a building or buildings" on the leased premises. The second cause of action was for unpaid rent in the amount of $375. A nonsuit was entered in favor of Klaff on both counts; judgment went for plaintiffs Ellis against Adams and Rose on the cause of action for unpaid rent, and for defendants on the cause of action for breach of covenant to construct. Subsequently on motion of plaintiffs the court granted a new trial on all the issues as to all of the defendants "on the grounds that the evidence is insufficient to justify the decision of the Court and that it is against the law." Defendants Rose and Klaff have appealed from this order; defendant Adams has not appealed.

In their opening brief appellants state that they are rais-

ing no question as to the propriety of the order as against defendant Adams nor as to its propriety insofar as it relates to the cause of action for unpaid rent. It is said "[t]he only matter about which complaint is made is that the order for new trial should have been limited, as permitted by Code of Civil Procedure, section 657, so as to exclude any new trial on the first cause of action against appellants."

In the summer of 1946, Adams was appointed sales agent for Kaiser-Fraser Automobiles for Ventura, California. Needing a location for conducting sales he executed the lease involved in the present action for a term of five years with an option to renew for an equal period, at a monthly rental of $125. The lease contained the following provisions:

"The lessee agrees to improve said premises by the construction of a building or buildings as soon as building conditions reasonably shall permit. It is understood that this obligation of the lessee is one of the elements of the consideration to be given by the lessee to the lessors for the execution of this lease. In connection with the construction and maintenance of any such improvements the lessee agrees to hold the lessors harmless from any liability whatsoever due to injury and/or damage to persons or property. Any building or structure constructed by the lessee shall comply strictly with the Building Code of the city of Buenaventura.

"Lessee agrees to carry adequate fire and earthquake insurance on structures erected by him on said property. Lessee also agrees to pay any increase in the City and County taxes on said property due to improvements placed or erected on said property by the lessee.

"It is understood that all buildings placed on or erected on the leased premises shall become a part of the real property and shall remain and shall inure to the benefit of the lessors at the termination of this lease."

Parol evidence was admitted, some of it over the objection of appellants, in an attempt to prove an agreement on the part of Adams to construct either a brick or concrete-block building with glass front and service garage, suitable for an automobile salesroom and repair shop, and costing approximately $12,000. Shortly after the execution of the lease in July, 1946, Adams caused an architect to prepare plans and specifications for such a building and he filed an application with the Civilian Priorities Administration for a construction permit. The permit was finally granted in January, 1947.

at which time building conditions were such as to permit construction to proceed. Meanwhile Adams had placed on the leased premises a construction shed approximately 8' x 10' containing a telephone, desk, and other office equipment from which he conducted his business. In December, 1946, Adams sold all of his assets, including the Kaiser-Fraser franchise, to defendant Rose and assigned the lease to him. The written assignment, which was signed by Rose, stated in part: ''I, Donald L. Rose, do hereby accept the foregoing assignment and do hereby agree to be bound by the terms, conditions and obligations in said lease contained and agree to save and hold W. B. Adams harmless from any further liability or obligations under the terms of said original lease.'' Rose, who conducted the automobile agency as Buena Motors, Inc., or his sublessee, paid rent under the lease through September, 1947. He moved the shed off the lot, and never physically occupied the property or used it in his business. Prior to the execution of the assignment he had leased other premises in Ventura upon which he conducted the Kaiser-Fraser agency; and he testified that he paid the rent on the leased premises for the sole purpose of retaining it for possible future use as a used car lot.

Defendant Klaff became associated with Rose for the first time in either January or February, 1947, as a stockholder in Buena Motors. He became vice-president or secretary of the corporation. There was no evidence that Klaff became at any time a party to the assignment, or that he entered into an agreement with plaintiffs or Adams to assume the obligations of the lease other than testimony by Mr. Ellis that Klaff had stated to him that ''somewhere in their dealings for the Kaiser-Fraser agency they assumed a lease''·; that Klaff asked Ellis to give his consent to a sublease in May, 1947; and also requested that the lease be cancelled in September, 1947. The present action was brought after the refusal of defendants in November, 1947, to comply with plaintiffs' written demand that they construct a building and pay the rent due.

██ Since the lease agreement was for a term of more than one year, its essential provisions were required by the statute of frauds (Civ. Code, § 1624(4)) to be in writing. Appellants contend that the construction clause of the lease, as written, is unenforceable due to uncertainty, and that the statute forbids its deficiencies to be supplied by parol evidence. It does not appear from the record that the applicability of the statute of frauds was urged in the trial court. Although appel-

lants' general denial may have been sufficient to raise the point (*Howard* v. *Adams*, 16 Cal.2d 253, 257 [105 P.2d 971, 130 A.L.R. 1003]), it was evidently not pursued with any show of diligence. The objections to introduction of evidence were not made on this ground, nor was the statute argued on appellants' motion for nonsuit. Appellants claim that the question was raised in connection with an unsuccessful motion to strike portions of the pleadings referring to parol understandings; and respondents admit that they presented points and authorities as to admissibility of extrinsic evidence in their trial brief. Neither of these documents, nor any transcript of oral argument pertaining thereto, was incorporated in the record, however. Conceding that the bar of the statute of frauds is being asserted for the first time upon the appeal, we nevertheless are constrained under the particular circumstances to exercise our discretion to consider the matter. (See *Solorza* v. *Park Water Co.*, 86 Cal.App.2d 653 [195 P.2d 523].) If the order granting a new trial is affirmed, the case will be restored to the same situation as any other contested case prior to trial. (*Kent* v. *Williams*, 146 Cal. 3, 7 [79 P. 527]; *Miller & Lux* v. *Enterprise C. etc. Co.*, 169 Cal. 415, 419 [147 P. 567]; *Gruben* v. *Leebrick & Fisher*, 32 Cal.App.2d Supp. 762, 766 [84 P.2d 1078].) The trial court, in its discretion, may permit the pleadings to be amended (*National City Finance Co.* v. *Lewis*, 216 Cal. 254 [14 P.2d 298]; *Stinnett* v. *Superior Court*, 36 Cal.App. 275 [171 P. 1076]), and may relieve the parties from the effect of stipulations, admissions, or waivers occurring at the previous trial (*Daneri* v. *Gazzola*, 2 Cal.App. 351, 355-358 [83 P. 455]; 39 Am.Jur. §§ 217-218, pp. 208-209; 46 C.J. §§ 581-583, pp. 462-463). The issues being set at large, it cannot be assumed that the parties would rely upon the same theory or be restricted to the same evidence as before. (*Morton* v. *Superior Court*, 105 Cal.App. 143 [286 P. 1072].) Since appellants are vigorously contending before us that the statute of frauds is a conclusive defense to plaintiffs' first cause of action, it may be assumed that they would so contend upon a retrial. Also, if respondents are correct in their position, it is appropriate that the issue be determined upon this appeal in order, if possible, to reach a final determination of the controversy without the need for a retrial and possible additional appeal, with attendant expense and delay.

The evidentiary consequences of the statute of frauds

(Civ. Code, § 1624) are in many respects similar to those of the parol evidence rule (Code Civ. Proc., § 1856). Both require exclusion of extrinsic evidence which would vary, contradict, or add to the terms of the written agreement under consideration (*Craig* v. *Zelian,* 137 Cal. 105 [69 P. 853], statute of frauds; *Germain Fruit Co.* v. *Armsby Co., 153* Cal. 585 [96 P. 319], parol evidence rule), but both permit reception of such evidence to identify the subject matter of the contract from the written description, explain the meaning of ambiguous, abstruse, or technical expressions, and assist in interpreting the expressed intentions of the parties in the light of circumstances existing at the time of execution. (10 Cal. Jur., "Evidence," § 186, pp. 916-919; 12 Cal.Jur., "Statute of Frauds," § 65, p. 902; *Gibson* v. *De La Salle Institute, 66* Cal.App.2d 609 [152 P.2d 774]; *Balfour* v. *Fresno C. & Irr. Co.,* 109 Cal. 221, 225 [41 P. 876]; *Von Rohr* v. *Neely,* 76 Cal. App.2d 713 [173 P.2d 828].) It must be recognized, however, that there is a basic distinction between the two rules, which, in certain circumstances, becomes of controlling significance.

The parol evidence rule is a principle of substantive law, premised upon the hypothesis that when the parties have voluntarily expressed their agreement in written form, the writing represents a complete integration of their understanding. (Wigmore on Evidence, vol. 9, § 2425, p. 76.) It is not calculated to, nor does it in practice, exert any compulsion upon the parties to put their entire understanding in writing. (*Lande* v. *Southern Cal. Freight Lines,* 85 Cal.App.2d 416, 420 [193 P.2d 144].) It does not, therefore, render inadmissible proof of contemporaneous oral agreements collateral to, and not inconsistent with, a written contract where the latter is either incomplete or silent on the subject, and the circumstances justify an inference that it was not intended to constitute a final inclusive statement of the transaction. (*Crawford* v. *France,* 219 Cal. 439, 443-445 [27 P.2d 645]; *Weil* v. *California Bank,* 219 Cal. 538 [27 P.2d 904]; *Van Slyke* v. *Broadway Ins. Co.,* 115 Cal. 644, 647 [47 P. 689, 928].)

The statute of frauds, on the other hand, is designed to prevent fraud and perjury by requiring certain contracts to be evidenced exclusively in writing. In order to effectuate that purpose, it demands that every material term of an agreement within its provisions be reduced to written form, whether the parties desire to do so or not. To be sufficient, the required writing must be one "which states *with reasonable certainty,* (a) each party to the contract . . . and (b) the

land, goods or other subject-matter to which the contract relates, and (c) *the terms and conditions of all the promises* constituting the contract and by whom and to whom the promises are made." (Restatement, Contracts, § 207. Emphasis added.) Unless the writing, considered alone, expresses the essential terms with sufficient certainty to constitute an enforceable contract, it fails to meet the demands of the statute. (*Breckinridge* v. *Crocker,* 78 Cal. 529, 535 [21 P. 179]; *Sherwood* v. *Lowell,* 34 Cal.App. 365, 375 [167 P. 554]; *Wineburgh* v. *Gay,* 27 Cal.App. 603 [150 P. 1003]; *Zellner* v. *Wassman,* 184 Cal. 80, 85-86 [193 P. 84]; *Fritz* v. *Mills,* 170 Cal. 449, 458 [150 P. 375]; *Hines* v. *Copeland,* 23 Cal.App. 36 [136 P. 728]; 37 C.J.S., § 195, p. 681. See, also, *Guardianship of Carlon,* 43 Cal.App.2d 204, 209 [110 P.2d 488].) Accordingly, where the statute of frauds, rather than the parol evidence rule is invoked, it follows that recovery may not be predicated upon parol proof of material terms omitted from the written memorandum, even though the oral understanding is entirely consistent with, and in no way tends to vary or contradict, the written instrument. (*Friedman* v. *Bergin,* 22 Cal.2d 535 [140 P.2d 1]; *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 P. 88, 134 Am.St.Rep. 154]; *Wristen* v. *Bowles,* 82 Cal. 84 [22 P. 1136]; *Edgar Bros. Co.* v. *Schmeiser Mfg. Co.,* 33 Cal.App. 667 [166 P. 366]; *Baume* v. *Morse,* 13 Cal.App. 456 [110 P. 350]; *Fields* v. *Harris,* (Tex.Civ.App.) 294 S.W. 612; *Linebarger* v. *Devine,* 47 Nev. 67 [214 P. 532, 217 P. 1101]; Williston on Contracts, vol. 2, pp. 1619, 1645; 49 Am.Jur., § 322, p. 636.) In the words of the Supreme Court, "The whole object of the statute would be frustrated if any substantive portion of the agreement could be established by parol evidence." (*Craig* v. *Zelian, supra,* 137 Cal. 105, 106.)

The distinction noted has apparently been overlooked upon occasion (see *Blahnik* v. *Small Farms Improvement Co.,* 181 Cal. 379 [184 P. 661]; *Stockburger* v. *Dolan,* 14 Cal.2d 313, 317 [94 P.2d 33, 128 A.L.R. 83]), but, as the Supreme Court indicates in 22 Cal.2d 535, 539, *supra,* such cases are not in point where they fail to discuss the statute of frauds. Although in *Rohan* v. *Proctor,* 61 Cal.App. 447, 453 [214 P. 986], the court employed language apparently opposed to the views here expressed, it is clear upon analysis that the portions of the opinion referred to were merely dictum, and hence not authoritative. The same is true of *Enlow* v. *Irwin,* 80 Cal.App. 98 [251 P. 658] (see, also, *Austin* v. *Bullion,* 77 Cal.App. 257

[246 P. 151], in which the Rohan case is cited). The distinction between the two rules has frequently proven to be a troublesome one, but is both sound in principle and supported by the great weight of authority. (In addition to authorities previously cited, see *Sheldmyer* v. *Bias,* 112 Ind.App. 522 [45 N.E.2d 347] ; *Patterson* v. *Beard,* 227 Iowa 401 [288 N.W. 414, 125 A.L.R. 393] ; *Stanley* v. *A. Levy & J. Zentner Co.,* 60 Nev. 432 [112 P.2d 1047, 158 A.L.R. 76] ; *Farrell* v. *Simons,* 180 Okla. 600 [71 P.2d 688] ; *Catterlin* v. *Bush,* 39 Ore. 496 [59 P. 706, 65 P. 1064] ; *In re Rosenthal's Estate,* 247 Wis. 555 [20 N.W.2d 643] ; *Hamilton* v. *Morrison,* 5 Cir., 146 F.2d 533 ; *Blue Valley Creamery Co.* v. *Consolidated Products Co.,* 8 Cir., 81 F.2d 182 ; *Simmons* v. *Birge Co.,* D.C. Calif., 52 F. Supp. 629 ; *Rosenberg* v. *Deitrick,* D.C. Mass., 37 F. Supp. 700.)

 The lease expressly provided that the lessee's obligation to build was one of the elements of consideration. It was clearly an essential term of the agreement, and, as such, was required by the statute of frauds to be expressed in the writing with sufficient certainty to evidence an enforceable contract. The construction clause in the lease, as written, however, is too vague and uncertain to give rise to a contractual duty. Aside from the requirement that the ''building or buildings'' comply with the city building code, and the implication that it (or they) be sufficiently substantial to be a valuable asset after expiration of the term, the lease is manifestly incomplete in failing to specify whether the lessee was to construct one or more buildings and is wholly silent as to the size, type, materials, location, cost, appearance, or any other details of construction. The language of the construction clause thus shows that, at the time of the execution of the lease, the parties expected to supplement it by a future agreement with respect to the improvement of the property. Although the terms of a contract need not be stated in the minutest detail, it is requisite to enforceability that it must evidence a meeting of the minds upon the essential features of the agreement, and that the scope of the duty and limits of acceptable performance be at least sufficiently defined to provide a rational basis for the assessment of damages. (12 Am.Jur., § 64, p. 554.) Tested by these settled rules, the construction clause in the present lease upon its face is manifestly unenforceable. (*Alderson* v. *Republican-Courier Co.,* 69 Mont. 271 [221 P. 544], ''upstairs portion of . . . building . . . is to be completed'' by lessee; *Cincinnati Underwriters*

*Agency Co.* v. *Thomas J. Emery Memorial,* 88 F.2d 506, lessee to build a "new building . . . of fireproof construction," with portion on leased premises to cost not less than $100,000; *Cannaday* v. *Martin,* (Tex.Civ.App.) 98 S.W.2d 1009, "brick building" with a party wall; *Hart* v. *Georgia R. R. Co.,* 101 Ga. 188 [28 S.E. 637], "first class hotel"; *Palombi* v. *Volpe,* 222 App.Div. 119 [226 N.Y.S. 135], lessee to make an "opening through the hall"; *Greater Houston Suburban Corp.* v. *Dupuy & Mullen,* (Tex. Civ.App.) 176 S.W. 668, to pave streets with shell; *Factor* v. *Peabody Tailoring System,* 177 Wis. 238 [187 N.W. 984], promise to deliver a "tailor made suit or overcoat"; *Jordan* v. *Buick Motor Co.,* 75 F.2d 447, promise to give "exclusive dealership"; Williston on Contracts, vol. 1, § 42, p. 119; 17 C.J.S., § 36, p. 364; Rest., Contracts, § 32.)

Any subsequent agreement which the parties may have reached with respect to the obligation to construct, was also required to be reduced to writing. (Civ. Code, § 1698; *Boyd* v. *Big Three Ranch Co.,* 22 Cal.App. 108 [133 P. 623]; anno. 118 A.L.R. 1511, 80 A.L.R. 539.) The record does not disclose the existence of any such subsequent memorandum, nor is it contended that one was ever executed.

Under these principles the extrinsic evidence relied upon by plaintiffs to cure the deficiencies of the construction clause was inadmissible, since its purpose and effect were to add material terms to the lease as written, and thereby prove by parol that a contract existed which could be proven solely by a writing as required by the statute of frauds.

▆ Plaintiffs seek to justify receipt of the parol evidence upon the ground that it was merely explanatory of an ambiguity in the writing. Cases are cited in which the receipt of parol evidence was approved for this purpose. It is unnecessary to analyze these cases, since they do not discuss the admission of extrinsic evidence with relation to the statute of frauds and are otherwise inapplicable. The provision in the lease for construction of "a building *or buildings,*" clearly indicates that the number of structures required, whether one or more, was to be left to future arrangement. There is, of course, ambiguity and uncertainty in the writing in this respect but it arises from the absence of any expressed agreement as to the very essence of the obligation to improve the property. The parol evidence was introduced to prove not only that a single building was to be erected, which was not expressed in the writing, but also, as we have pointed out,

that the lessee was obligated to construct either a brick or concrete block building of a certain type which would cost approximately $12,000. This was an attempt, not to resolve an ambiguity, but to supply essentials of a complete agreement which were lacking in the writing. It is clear that the receipt of parol evidence for the purpose of adding substantial terms to an otherwise unenforceable writing would be contrary to the requirements of the statute of frauds and destructive of its purpose. The case is governed by *Friedman* v. *Bergin, supra,* 22 Cal.2d 535, wherein it was held that under the statute of frauds parol evidence could not supply the unwritten details of an arrangement between the parties as to the method of operation of certain race-track concessions, where the written contract merely named the concessions for which plaintiff had contracted.

The order should be reversed insofar as it grants plaintiffs a new trial as to Rose and Klaff on the first cause of action.

■ As to the second cause of action the situation is the following: Plaintiffs had judgment against Rose and Adams for the full amount of rent demanded in the complaint, and judgment of nonsuit was rendered in favor of Klaff. Neither Adams, Rose nor Klaff made a motion for a new trial and Adams, as we say, has not appealed. As between plaintiffs and Rose the order granting a new trial as to the second cause of action is void. New trial procedure is jurisdictional. (*Del Barrio* v. *Sherman,* 16 Cal.App.2d 407, 412-413 [60 P.2d 559] ; *Cooper* v. *Superior Court,* 12 Cal.App.2d 336 [55 P.2d 299].) Only a party aggrieved by the judgment may make a motion for new trial under section 657, Code of Civil Procedure, and plaintiffs were not aggrieved by the judgment which awarded them all they sought to recover from Rose by way of rent. Since plaintiffs' motion was unauthorized and Rose did not move for a new trial, the court had no power to order one. The judgment on the second cause of action must therefore stand as between plaintiffs and Rose.

As between plaintiffs and Klaff, plaintiffs were aggrieved by the judgment of nonsuit in favor of Klaff, and their motion for a new trial was proper. Oddly enough, Klaff does not seek a reversal of the order granting a new trial as to the second cause of action, and plaintiffs argue that the order should be affirmed in this particular. Under these circumstances this portion of the order will not be disturbed. The affirmance, however, is not to be regarded as a holding that

the evidence in the record would be sufficient to support a judgment against Klaff for rent.

The order is final as to Adams, and since he is not before the court, no opinion is expressed as to any question of his liability upon either the first or second cause of action.

The order granting a new trial as to the first cause of action is reversed as to defendants Rose and Klaff; it is also reversed insofar as it purports to grant a new trial as between plaintiffs and Rose on the second cause of action; and it is affirmed as between plaintiffs and Klaff as to the second cause of action. Appellants are awarded costs on appeal.

Wood, J., and Vallée, J., concurred.