[Civ. Nos. 19618, 19619.   Second Dist., Div. Three.   Nov. 19, 1953.]

COLORADO CORPORATION, LTD. (a Corporation) et al., Appellants, v. DELMER J. SMITH, Respondent.

Irwin M. Fulop and Marvin A. Burnett for Appellants.

Porter C. Blackburn for Respondent.

VALLÉE, J.—Appeals by plaintiffs from judgments for defendant in two suits for specific performance of contracts for the sale of realty.  The actions were consolidated for trial; separate findings and conclusions were made and judgments entered.

In 19618 the transaction will be referred to as the Woodman transaction.  In 19619 it will be referred to as the Sunnyslope transaction.

### The Woodman Transaction

The contract consisted of a written offer by plaintiff Bard to buy the realty in his name or in that of his nominee, which was accepted by defendant in writing, and escrow instructions signed by plaintiff Colorado Corporation, Ltd., and by defendant.  The purchase price was $17,500; payable

$8,750 cash through the escrow and a note for $8,750 with interest at 5 per cent payable quarterly, principal payable on or before three years from date of the note "on unpaid balances." The note was to be secured by a purchase money deed of trust. It was agreed that the deed of trust should contain a provision that defendant would release parcels of not less than 50 feet by 150 feet fronting on Woodman Avenue, on payment of $44 a front foot. The contract contained these provisions:

"The buyer herein agrees to construct at such time as he chooses residences of not less than 1200 square feet each on the parcels facing on Gault Street. This is an agreement between buyer and seller only and your escrow is in no way concerned with or responsible for the execution of this agreement. . . .

"This escrow is further contingent upon the purchaser receiving approval from the City of Los Angeles that they will issue building permits on a metes and bounds basis within 45 days from date thereof. If such approval cannot be received, then at the option of the purchaser any monies deposited are to be returned to the purchaser excepting any funds required to pay for expenses incurred in connection with title search and escrow fee."

Defendant agreed to deliver to the escrow an executed deed and to procure for Colorado a policy of title insurance. The escrow was opened on April 27, 1951. The instructions specified 90 days, or until July 26th, for completion of the escrow. Plaintiff Colorado Corporation, Ltd., was designated as nominee by plaintiff.

The buyer did not secure the approval of the city of Los Angeles that it would issue building permits on a metes and bounds basis. On June 5th, the buyer delivered to the escrow a writing by which it waived this provision of the contract and the instruments required by the contract.

About May 14th, defendant delivered to the escrow a grant deed of the property signed by him, but not acknowledged. The deed contained this provision: "Said land shall be used for residence purposes only, each residence to contain not less than 1200 square feet each, exclusive of garages. Lots on Gault Street are to be not less than 59 foot frontage."

On June 21st, 36 days prior to the date fixed for close of the escrow, the seller delivered to the escrow a written notice purporting to cancel the escrow instructions, and demanded the return of all papers deposited by him in the escrow.

On July 3d, the buyer deposited $8,750 in the escrow.

The court concluded: 1. The contract lacked mutuality. 2. Plaintiffs did not perform all of the undertakings required of them by the contract. 3. The contract was indefinite and uncertain; and as to defendant, it was unjust and unreasonable. 4. There was no consideration to support the contract apart from performance by plaintiffs. Specific performance was denied. Plaintiffs appeal from the judgment. Their assignment of error is that the findings are unsupported by the evidence.

We need to consider only whether the contract is so indefinite and uncertain that it is unenforceable in equity.

■ A contract to be binding must be definite and certain. (*Goehring* v. *Stockton Morris Plan Co.*, 93 Cal.App.2d 417, 420-421 [209 P.2d 41].) A contract will not be enforced unless it is complete and certain. (*Blake* v. *Mosher*, 11 Cal. App.2d 532, 535-536 [54 P.2d 492].) Where a party seeks specific performance of a contract, the terms of the contract must be certain and definite in all particulars essential to its enforcement. A court must be able to say what is the stipulated performance. (*Moore* v. *White*, 98 Cal.App.2d 510, 513 [220 P.2d 918].) In *Cannaday* v. *Martin*, (Tex.Civ.App.) 98 S.W.2d 1009, the court said (p. 1012): " 'A promise to erect buildings where the dimensions and plans are not specified, or which refers to plans and specifications as a part of a contract though no plans and specifications are attached, . . . "are all too vague," and are not of "sufficient definiteness" . . . to be "enforceable." ' ' Williston on Contracts, Revised Edition, vol. 1, pp. 120, 121, par. 42. This text is supported by the holding in *Greater Houston Surb. Corp.* v. *Dupuy & Mullen* (Tex.Civ.App.) 176 S.W. 668; *Bissinger* v. *Prince*, 117 Ala. 480, 23 So. 67; *Palombi* v. *Volpe*, 222 App.Div. 119, 226 N.Y.S. 135, and *American Bridge & Contract Co.* v. *Bullen Bridge Co.*, 29 Or. 549, 46 P. 138." (See, also, *California Ref. Co.* v. *Producers Ref. Corp.*, 25 Cal.App. 2d 104 [76 P.2d 553]; cf. *Ellis* v. *Klaff*, 96 Cal.App.2d 471 [216 P.2d 15]; *Donnelly* v. *Adams*, 115 Cal. 129 [46 P. 916]; *West Coast Lbr. Co.* v. *Knapp*, 122 Cal. 79, 82-84 [54 P. 533]; *Coghlan* v. *Quartararo*, 15 Cal.App. 662, 666 [115 P. 664]; *L. W. Blinn Lbr. Co.* v. *Cohn*, 33 Cal.App. 386, 388 [165 P. 444].)

■ Obviously the clause by which the buyer agreed to construct residences on Gault Street was an essential term of the contract; it was part of the consideration to the seller

for his promise to sell, manifestly to better secure him in the payment of the purchase price. Apart from the requirement that the residences should not be less than 1,200 square feet each, the contract is incomplete in not specifying how many residences were to be constructed and is silent as to the size (except that each was to be 1,200 square feet), type, location, cost, appearance, or any other details of construction. Plaintiffs waived their right to secure permission to build on a metes and bounds basis. The sizes of the parcels on Gault Street were not specified. At the oral argument, the parties agreed that the property was not subdivided.

The provision of the contract with respect to the construction of residences on Gault Street is too vague and uncertain to give rise to a contractual duty. It made the entire contract unenforceable in equity.

██ Since these findings alone support the judgment, it is unnecessary to discuss the sufficiency of the evidence to support the remaining findings. (*Sands* v. *Eagle Oil & Ref. Co.*, 83 Cal.App.2d 312, 321 [188 P.2d 782].)

### The Sunnyslope Transaction

The contract in this transaction also consisted of a written offer by plaintiff Bard to buy in his name or in that of his nominee, which was accepted by defendant in writing, and escrow instructions signed by Colorado, designated by Bard as his nominee, and by defendant. The purchase price was $16,000; payable $4,000 cash through the escrow and a note for $12,000 with interest at 5 per cent payable quarterly, principal payable on or before three years from date of the note "on unpaid balances." The note was to be secured by a purchase money deed of trust. Defendant agreed to deliver an executed deed into the escrow and to procure for Colorado a policy of title insurance. The contract contained these provisions:

"As a matter of record of an agreement between the parties hereto, when the parcel of land is mapped and subdivided the amount of principle then due is to be divided among all of the lots in the tract and the sum arrived at shall be the amount of money which must be paid to the seller, or his successors in interest, in order for him, or them, to release any particular lot or parcel from the purchase money trust deed in the customary manner, such as partial reconveyances. By 'releases' it is intended between the parties hereto that the seller will execute and forward to Trustee Request for Partial Recon-

veyance covering each parcel as payment is received from the buyer and such amounts so paid are to be deducted from the principal sum then remaining.

"It is further understood and agreed that any balance of principal still remaining due and unpaid three years after close of escrow must be paid in full at that time.

"The buyer herein agrees to construct at such time as he chooses residences of not less than 1200 square feet each on the parcels facing on Gault Street. This is an agreement between buyer and seller only and your escrow is in no way concerned with or responsible for the execution of this agreement."

The escrow was opened on May 1, 1951. The instructions specified 150 days, or until September 27th, for completion of the escrow.

Plaintiff proceeded with plans for subdivision of the property and submitted a tentative map to the Planning Commission of Los Angeles. On July 5, 1951, the planning commission approved the tentative tract on various conditions. Bard testified that plaintiffs did not comply with the conditions because they could not get the property.

Prior to September 29, 1951, plaintiffs deposited $4,000 and the instruments required by the contract in the escrow.

On October 3, 1951, defendant delivered to the escrow holder a notice in writing purporting to cancel the escrow instructions.

The court drew the same conclusions as to the contract in this case as it did as to the contract in the Woodman transaction. Specific performance was denied. Plaintiffs appeal from the judgment contending that the findings are unsupported by the evidence.

What we have said with respect to the contract in the Woodman transaction is equally applicable to the contract in this case. The provision of the contract in this case with respect to the construction of residences on Gault Street is identical with the provision in the Woodman case. It likewise is too vague and uncertain to give rise to a contractual duty, and renders the entire contract unenforceable in equity.

Each judgment is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 13, 1954. Traynor, J., was of the opinion that the petition should be granted.